# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES NEEL and | § | PLAINTIFFS |
| BONNIE NEEL | § | |
| | § | |
| V. | § | CIVIL NO. 1:12cv311-HSO-RHW |
| | § | |
| FANNIE MAE; RESIDENTIAL | § | DEFENDANTS |
| CREDITSOLUTIONS, INC.; SAXON | § | |
| MORTGAGE SERVICES, INC.; | § | |
| CAPITAL LENDING, LLC; | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC.; | § | |
| and JOHN DOES 1-10 | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FANNIE MAE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S AMENDED MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Fannie Mae's Motion for Summary Judgment [156], Plaintiffs Charles and Bonnie Neel's Response in Opposition [179], and Fannie Mae's Rebuttal [200]. Also before the Court is Mortgage Electronic Registration Systems, Inc.'s ("MERS") Amended Motion for Summary Judgment [164], Plaintiffs' Response in Opposition [176], and MERS' Rebuttal [192]. Having considered the parties' briefs, the record, and relevant legal authorities, the Court is of the opinion that Fannie Mae's Motion for Summary Judgment should be granted, that MERS' Amended Motion for Summary Judgment should be granted, and that Plaintiffs' claims against Fannie Mae and MERS should be dismissed with prejudice.

1

## I.    BACKGROUND

A.    Factual Background

This civil action arises from the servicing of a note executed by Plaintiffs on February 23, 2007 ("the Note").  The record establishes beyond dispute the following facts.  Payment of the Note was secured by a Deed of Trust related to Plaintiffs' home located at 7012 Red Bud Lane, Ocean Springs, Mississippi.[1]  Dep. of Charles and Bonnie Neel ("Neel Dep.") 7:3-9, 33:4-9 [158-5]; Deed of Trust [156-2].  Capital Lending, LLC, was listed as the lender on the Note, and AmTrust was the initial servicer.  Note [156-1], Neel Dep. 42:4-11 [158-5].  Pursuant to the terms of the Deed of Trust, MERS was listed as the beneficiary of record, as nominee for Capital Lending, LLC, its successors, and assigns, of the Deed of Trust that secured payment of the Note. Deed of Trust 3 [156-2].  The terms of both the Note and Deed of Trust permitted transfer of both instruments by the lender.  Note ¶1, Deed of Trust ¶20.

The Loan was transferred to Fannie Mae in March 2010.  Dep. of Keith Frantz ("Frantz Dep.") 10:14-11:14.  Fannie Mae retained Defendant Saxon Mortgage Services, Inc., to act as servicer for Plaintiffs' Loan.  Neel Dep. 42:4-11, 43:15-20; Frantz Dep. 19:16-22.  Fannie Mae considers Saxon to be an independent contractor.  Frantz Dep. 19:16-22; Ex. K to Fannie Mae's Mot. for Summ. J. [156-11].  Fannie Mae promulgated a set of servicing guidelines "intended to set forth the broad parameters under which [Saxon's employees] should exercise their sound professional judgment as mortgage loan servicers . . . ."  Ex. K to Fannie Mae's Mot.

_____

[1] The Note and the Deed of Trust will occasionally be referred to collectively as the "Loan."

for Summ. J. [156-11].  The servicing guidelines do not "set forth absolute requirements" because servicers such as Saxon are expected "to maintain the discretion to apply appropriate judgment in dealing with borrowers and mortgage loans on a case-by-case basis . . . ."  *Id.*

On July 7, 2010, Plaintiffs applied to Saxon for a modification on their Loan. Making Home Affordable Program Request for Modification and Affidavit [156-6]. On August 13, 2010, Saxon informed Plaintiffs that they were approved for a trial modification period.  Ex. G to Fannie Mae's Mot. for Summ. J. [156-7].  Plaintiffs were later approved for a permanent modification on January 5, 2011.  Ex. H to Fannie Mae's Mot. for Summ. J. [156-8].  Plaintiffs did not agree with the terms of the permanent modification and rejected it in correspondence dated January 30, 2011.  Neel Dep. 93:3-94:9, Ex. I to Fannie Mae's Mot. for Summ. J. [156-9]. Thereafter, Plaintiffs and Saxon engaged in a back-and-forth dispute over the terms of the Loan and the status of an escrow account which had been added to the Loan. Neel Dep. 110:14-111:22, 112:8-21, 112:22-113:5, 115:9-21, 116:6-19, 118:8-22, and 127:19-23.

In June 2011, Plaintiffs ceased making payments on the Loan and admit that they have not made a payment since that date.  *Id.* at 133:10-13.  On November 9, 2011, MERS assigned its interest in the Deed of Trust to Saxon pursuant to an Assignment and Transfer of Lien [164-1] ("the Assignment").  The Assignment was recorded in the probate records of Jackson County, Mississippi, on January 3, 2012. Ex. "C" to Aff. of Brian Blake [164-1].

B.    Procedural Background

Plaintiffs filed suit against Fannie Mae, Saxon, MERS, and two additional Defendants on September 12, 2012, in the Circuit Court of Jackson County, Mississippi.  Complaint [1-2].  The case was removed to this Court on October 12, 2012, on the basis of diversity jurisdiction.  Notice of Removal 1 [1].  Plaintiffs filed an Amended Complaint [38] on March 26, 2013, and a Second Amended Complaint [63] on May 16, 2013.  The Second Amended Complaint is not clear, but appears to assert claims for breach of contract, negligence, breach of the duty of good faith and fair dealing, breach of fiduciary duties, modification of Plaintiffs' Loan, a surrender of the mortgage, retraction of all negative credit reporting, conspiracy, fraudulent conveyance, violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq*. ("RESPA"), and violation of the Fair Debt Collection Practices Act,  15 U.S.C § 1692 ("FDCPA").  Second Am. Compl. 1-11.

Construing the pleadings in Plaintiffs' favor, they appear to advance claims against Fannie Mae for negligence, conspiracy, respondeat superior, "non-delegable duty," failure to register Plaintiffs' mortgage with the Securities and Exchange Commission ("SEC"), and that Fannie Mae's receipt of the Note was pursuant to an invalid transfer.  *Id*. at ¶¶ 26, 31.  With respect to MERS, Plaintiffs appear to assert a claim for fraudulent conveyance.   *Id*. at ¶ 27.

On November 22, 2013, Fannie Mae moved for summary judgment.  Fannie Mae's Mot. for Summ. J. 2-3 [156].   Fannie Mae argues that, contrary to Plaintiffs' allegations, Plaintiffs' Loan is not a mortgage-backed security requiring registration

4

with the SEC.  Fannie Mae's Mem. Br. in Supp. of Mot. for Summ. J. 5 [157].
Fannie Mae further contends that Plaintiffs have failed to establish that the
transfers of their mortgage were fraudulent.  *Id.* at 5-6.  With respect to Plaintiffs'
claims stemming from the servicing of their Loan, Fannie Mae asserts it is entitled
to judgment as a matter of law because Fannie Mae did not perform the servicing of
Plaintiffs' Loan and retained an independent contractor to service the Loan. *Id.* at
6-7.  Fannie Mae also reasons that Plaintiffs' claims pursuant to RESPA and the
FDCPA fail as a matter of law because RESPA does not apply to Fannie Mae under
the circumstances of this case, and Fannie Mae is not a "debt collector" under the
FDCPA.  *Id.* at 7-8.  Lastly, Fannie Mae seeks summary judgment as to any fraud
claim purportedly asserted by Plaintiffs on the basis that Plaintiffs have failed to
plead or establish specific facts supporting such a claim.  *Id.* at 8.

On November 25, 2013, MERS also moved for summary judgment.  MERS'
Am. Mot. for Summ. J. 1-2 [164].  MERS contends it is entitled to summary
judgment because MERS was not involved in the servicing of the Loan, it cannot
provide the relief Plaintiffs seek, the Assignment was properly executed and
supported by consideration, and Plaintiffs lack standing to challenge the
Assignment.  *Id.* at 1-5.  Plaintiffs dispute that MERS is entitled to summary
judgment on the basis that the Assignment purports to assign an interest in the
Note in addition to MERS' interest in the Deed of Trust.  Pls.' Mem. in Supp. of
Resp. in Opp'n to MERS Mot. for Summ. J. 1-2 [177].  As a result, the Assignment is
void as a matter of law.  *Id.* at 3.  Plaintiffs further contend summary judgment in

favor of MERS is inappropriate because the Assignment was not supported by consideration. *Id.* at 3-8.

## II.   DISCUSSION

A.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E&P USA Inc. v. Kerr-McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law[, and] [a]n

issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.   Fannie Mae's Motion for Summary Judgment

     1.   Plaintiffs' Negligence Claim Against Fannie Mae

Fannie Mae has moved for summary judgment as to Plaintiffs' claims related to servicing on the basis that Fannie Mae took no part in servicing Plaintiffs' Loan, and Plaintiffs' claims were made pursuant to Fannie Mae's servicing guidelines such that they fail as a matter of law. Mem. Br. in Supp. of Mot. for Summ. J. 6 [157]. Plaintiffs respond that Fannie Mae's guidelines are "ineffective" because the guidelines do not specifically address the precise situation presented in this case. Mem. in Supp. of Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 6 [179]. Without citing any legal authority in support of their theory, Plaintiffs claim Fannie Mae's promulgation of "ineffective" guidelines amounts to actionable negligence. *Id.* at 7.

The Court is of the opinion that Plaintiffs have not met their summary judgment burden in opposing Fannie Mae's Motion with respect to a negligence claim. The servicing guidelines are not a part of Plaintiffs' contract with Fannie Mae. *Hinton v. Fed. Nat. Mortgage Ass'n*, 945 F. Supp. 1052, 1056-57 (S.D. Tex. 1996), *aff'd*, 137 F.3d 1350 (5th Cir. 1998) (noting Fannie Mae's guidelines are "a set of instructions from a lender-principal to a servicer-agent[, and are neither] a contract between borrower and lender" nor "contractually part of" Fannie Mae's relationship with Plaintiffs). Nor are Plaintiffs third party beneficiaries of Fannie Mae's servicing guidelines. *See, e.g.*, *Pennell v. Wells Fargo Bank, N.A.*, No. 1:10-cv-582-HSO-RHW, 2012 WL 2873882, at *8 (S.D. Miss. July 12, 2012), *aff'd*, 507 F. App'x 335 (5th Cir. 2013) (noting "[f]ederal courts have uniformly held that borrowers are not third-party beneficiaries of mortgage servicing guidelines") (citing cases). Plaintiffs have not presented the Court with a sufficient factual or legal basis demonstrating that they have standing to assert a negligence claim against Fannie Mae stemming from what they contend are negligently drafted servicing guidelines, to which Plaintiffs undisputedly were neither parties nor intended beneficiaries. Fannie Mae is entitled to summary judgment on Plaintiffs' negligence claim.

2.     Plaintiffs' Civil Conspiracy Claim Against Fannie Mae

Plaintiffs argue Fannie Mae is liable to them based upon an alleged conspiracy between Fannie Mae and Saxon. Mem. in Supp. of Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 7-11 [179]. According to Plaintiffs, Fannie Mae

8

was "united in action" with Saxon by virtue of Fannie Mae's servicing guidelines. *Id*. at 8.   Plaintiffs further assert that Saxon "committed multiple breaches of the Deed of Trust," which amounted to an independent tort, and that Fannie Mae "conspired" with Saxon.  *Id*. at 11.  Fannie Mae responds that Plaintiffs' argument in this regard amounts to a mere restatement of the allegations in the Complaint such that Plaintiffs have failed to meet their burden on summary judgment as to the conspiracy claim.  Fannie Mae's Mem. Br. in Supp. of Its Rebuttal 5 [200].

A "conspiracy is defined as 'a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully.'" *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 753-54 (S.D. Miss. 2002) (citing *Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia*, 790 So. 2d 862, 877 (Miss. Ct. App. 2001) (en banc)).  "[T]o succeed on a claim of civil conspiracy, a plaintiff must show (1) the existence of a conspiracy, (2) an overt act in furtherance of that conspiracy, and (3) damages arising therefrom." *Id*. at 753 (quoting *Levens v. Campbell*, 733 So. 2d 753, 761 (Miss. 1999)).

Plaintiffs have failed to put forth sufficient evidence to support a conspiracy claim against Fannie Mae.  Although Plaintiffs' opposition brief is wrought with assertions that Fannie Mae and Saxon were "united in action," that Fannie Mae was "in ultimate control" of Saxon at all times, and that "Fannie Mae 'conspired' with Saxon," Plaintiffs offer no reference to competent summary judgment evidence to support these assertions.   Plaintiffs have not demonstrated the existence of a genuine dispute as to any material fact with respect to their conspiracy claim

against Fannie Mae.  *See, e.g.*,  *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) ("[i]n response to [a] motion[] for summary judgment, it is [] incumbent upon the non-moving party to present evidence[,] not just conjecture and speculation[,]" supporting the non-moving party's claim); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("[U]nsubstantiated assertions are not competent summary judgment evidence."); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.").

### 3.   Plaintiffs' *Respondeat Superior* Claim Against Fannie Mae

Plaintiffs assert in response to Fannie Mae's Motion for Summary Judgment that Fannie Mae is liable to them on the basis of *respondeat superior*.  Plaintiffs contend that regardless of how Fannie Mae characterizes Saxon's role, Fannie Mae is liable for Saxon's misconduct based on the application of various factors set forth in *McRary v. Wade*, 861 So. 2d 358, 361 (Miss. Ct. App. 2003).[2]  Mem. in Supp. of Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 11-17 [179].  Plaintiffs further maintain that Mississippi public policy mandates that Fannie Mae be held liable for Saxon's alleged misconduct.  *Id*. at 17-18.

Fannie Mae posits that several factors set forth by the *McCrary* Court are lacking here.  Fannie Mae's Mem. Br. in Supp. of Rebuttal 6-7 [200].  Fannie Mae contends that the "overriding factor" is whether the alleged employer exercised

---

[2] The factors set forth by the Mississippi Court of Appeals in *McCrary* were first announced by the Mississippi Supreme Court in *Kisner v. Jackson*, 132 So. 90, 91 (Miss. 1931).  In considering Plaintiffs' argument pertaining to *respondeat superior*, the Court will refer to *Kisner*.

sufficient control over the engaged party to create an employer-employee relationship, and that no evidence of this factor is present. *Id*. at 5-6. Fannie Mae also contends that the public policy Plaintiffs cite is inapplicable to this dispute. *Id*. at 8.

In determining whether Saxon's relationship with Fannie Mae is that of an employee or independent contractor, the principal focus is on whether Fannie Mae exercised the requisite amount of control over Saxon. *McKee v. Brimmer*, 39 F.3d 94, 96 (5th Cir. 1994) (interpreting Mississippi law). "When the facts are undisputed, the type of relationship is a legal question." *Woodring v. Robinson*, 892 F. Supp. 2d 769, 776 (S.D. Miss. 2012) (citation and quotation marks omitted). Both Fannie Mae and Saxon consider Saxon to be an independent contractor. Ex. K to Fannie Mae's Mot. for Summ. J. [156-11]. How Fannie Mae and Saxon view their relationship, however, does not control. *Woodring*, 892 F. Supp. 2d at 776. Thus, the Court must analyze the relevant factors announced by the Mississippi Supreme Court to ascertain whether a party is actually an independent contractor, or something more. *Kisner*, 132 So. at 91. *Kisner* identified the factors as follows:

> [1] Whether the principal master has the power to terminate the contract at will; [2] whether he has the power to fix the price in payment for the work, or vitally controls the manner and time of payment; [3] whether he furnishes the means and appliances for the work; [4] whether he has control of the premises; [5] whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output; [6] whether he has the right to prescribe and furnish the details of the kind and character of work to be done; [7] whether he has the right to supervise and inspect the work during the course of the employment; [8] whether he has the right to direct the details of the manner in which the work is to be done; [9] whether he has the right to

11

employ and discharge the sub-employees and to fix their compensation; and [10] whether he is obliged to pay the wages of said employees.

*Id.*

    a.  <u>Factor One: Whether Fannie Mae Had the Power to Terminate the Contract with Saxon at Will</u>

The evidence supports the conclusion that there is no dispute that both Saxon and Fannie Mae had the authority to "terminate the servicing arrangement without cause." Ex. 5 to Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. [178-5]. The Court concludes this factor weighs in favor of considering Saxon to be an independent contractor of Fannie Mae. *See Walker v. McClendon Carpet Serv., Inc.*, 952 So. 2d 1008, 1010 (Miss. Ct. App. 2006) (indicating that the fact that both the alleged employee and the alleged employer could have terminated the service contract at issue, albeit through different means, weighed in favor of concluding the alleged employee was merely an independent contractor).

    b.  <u>Factor Two: Whether Fannie Mae Had the Power to Fix the Price in Payment for the Work, or Vitally Controlled the Manner and Time of Payment</u>

Fannie Mae pays Saxon based on a point system for loans that are current, and does not pay for loans that are delinquent. Frantz Dep. 20:17-23 [156-10]. Saxon is paid, however, for delinquent loans upon which Saxon is able to complete a modification or workout plan. *Id.* at 21:2-6. Saxon thus was paid based on the loans it was able to keep current and the delinquent loans it was able to salvage. Because Saxon had as much, if not more, control over these conditions as Fannie Mae, the Court concludes this factor weighs in favor of characterizing Saxon as an

independent contractor.  *Cf. Woodring*, 892 F. Supp. 2d at 777 (concluding that where contractor could submit bids for jobs and purported employer could either accept or reject bid, contractor, by creating the bid it submitted, determined what it would be paid).

        c.  <u>Factor Three: Whether Fannie Mae Furnished the Means and Appliances for the Work</u>

Plaintiffs assert that the mere fact that the Deed of Trust and modification forms appear on Fannie Mae's form documents sways this factor in favor of finding an employer-employee relationship.  Mem. in Supp. of Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 14 [179].  Aside from this, Plaintiffs offer no evidence that Fannie Mae provides the facilities, computers, printers, fax machines, office furniture, or other office supplies enabling Saxon to perform its work.  The Court finds that this factor weighs in favor of viewing Saxon as an independent contractor. *See Walker*, 952 So. 2d at 1010-11 (where carpet cleaning service used cleaning chemicals provided by purported employer but utilized service's own van and equipment to conduct the cleaning, court indicated this factor weighed in favor of considering the carpet cleaning service to be an independent contractor).

        d.  <u>Factor Four: Whether Fannie Mae Had Control of Saxon's Premises</u>

There is no evidence that Fannie Mae had or exercised any control over Saxon's premises.  This factor weighs in favor of treating Saxon as an independent contractor. *Kossuth Trucking, Inc. v. Caterpillar, Inc.*, 941 So. 2d 903, 910 (Miss. Ct. App. 2006).

e. <u>Factor Five: Whether Fannie Mae Furnished Materials upon which the Work was Done and Received the Output Thereof, Saxon Having Dealt with No Other Person in Respect to the Output</u>

Considering the evidence submitted by the parties with respect to this factor, the Court finds that this factor weighs on the side of Saxon being considered an independent contractor.  Saxon reports to the various credit bureaus at its own discretion.  Frantz Dep. 39:23-25 [156-10].  Saxon has the discretion to choose the insurance carrier from which Saxon will seek lender-placed insurance coverage, Saxon pays the insurance carrier directly, and Saxon retains and pays legal counsel should foreclosure become necessary.  *Id*. at 43:24-44:18, 44:22-45:9, 50:19-25.

f. <u>Factor Six: Whether Fannie Mae Had the Right to Prescribe and Furnish the Details of the Manner in Which the Work was Done</u>

Plaintiffs point out that Fannie Mae requires Saxon to have written procedures in place to ensure that Saxon's staff is knowledgeable in all aspects of mortgage loan servicing.  Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 14 [178-8].  The evidence before the Court, however, does not indicate that Fannie Mae mandates the specific contents or approves the terms of those written procedures.  *See* Ex. 8 to Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. [178-8].  In addition, the servicing guidelines Fannie Mae provides to Saxon are only "intended to set forth the broad parameters under which [Saxon's employees] should exercise their sound professional judgment as mortgage loan servicers . . . ."  Ex. K to Fannie Mae's Mot. for Summ. J. [156-11].  The Court finds that this factor weighs in favor of concluding that Saxon was an independent contractor.  *Cf. Kossuth Trucking, Inc.*, 941 So. 2d at 908-10 (concluding that the fact that the engine manufacturer

14

provided a repair shop with service manuals and guides for certain repairs did not amount to the manufacturer "prescrib[ing]" the details of the work performed at the repair shop).

        g.   <u>Factor Seven: Whether Fannie Mae Had the Right Supervise and Inspect the Work During the Course of Employment</u>

Fannie Mae supervises certain modifications and liquidations of loans, but Saxon is afforded authority to conduct modifications falling within certain eligibility criteria without Fannie Mae's approval.  Frantz Dep. 22:25-23:11 [156-10].  Saxon is responsible for resolving delinquency issues.  *Id*. at 22:15-21.  Fannie Mae periodically observes Saxon's work to ensure Saxon is complying with the servicing guidelines set forth by Fannie Mae.  *Id*. at 12:17-13:9.  Fannie occasionally will monitor telephone calls between Saxon and borrowers to ensure Saxon is responding to the unique needs of the particular borrower.  *Id*. at 14:10-20.  The Court is of the opinion that on the whole this factor weighs in favor of considering Saxon to be an employee of Fannie Mae.

        h.   <u>Factor Eight: Whether Fannie Mae Had the Right to Direct the Details of the Manner in Which the Work was To Be Done</u>

Saxon is left with authority to determine whether late fees on a particular loan will be waived.  *Id*. at 36:24-37:2, 38:22-25.  Saxon has sole authority to reform a mortgage.  *Id*. at 37:13-17.  Saxon has discretion to reduce penalties which have accumulated on a particular loan.  *Id*. at 39:9-12.  Fannie Mae does not report to the various credit bureaus; such reporting is made at Saxon's discretion.  *Id*. at 39:23-25.  Saxon determines whether to require lender-placed insurance on a particular

loan.  *Id*. at 42:8-43:5.  Saxon has the discretion to determine what type of insurance will be placed on a particular loan and with which carrier.  *Id*. at 43:24-44:18.  Saxon must bear the cost of placing insurance on a particular mortgaged property, and of legal counsel should foreclosure become necessary.  *Id*. at 44:22-45:9, 50:19-25.  Saxon has discretion to determine if foreclosure should proceed, to apply late fees, to create an escrow account, and to determine whether a borrower is entitled to a modification.  *Id*. at 53:19-54:21.  The Court concludes that this factor weighs in favor of concluding that Saxon was an independent contractor.

    i. <u>Factors Nine and Ten: Whether Fannie Mae Had the Right to Employ and Discharge the Sub-Employees and to Fix Their Compensation *and* Whether Fannie Mae is Obliged to Pay Saxon's Employees' Wages</u>

There is no evidence that Fannie Mae had the right to employ, discharge, or fix the compensation of Saxon's employees, and there is an equal dearth of evidence indicating that Fannie Mae must pay Saxon's employees' wages.  These factors weigh in favor of considering Saxon to be an independent contractor.

    j. <u>The *Richardson* Exception: Whether Public Policy Requires that Saxon Be Considered Fannie Mae's Agent</u>

"A threshold requirement for the public policy exception is that, absent a finding of agency, the injured party will be 'denied an adequate legal remedy.'"  *Kossuth Trucking, Inc.*, 941 So. 2d at 908 (citing *Richardson*, 631 So. 2d at 150).  A conclusion that Saxon was not Fannie Mae's agent will not leave Plaintiffs empty-handed; Plaintiffs have an adequate legal remedy against Saxon. The Court concludes that *Richardson's* public policy exception has no application in this case.

k.  Summary

Applying the *Kisner* factors to the undisputed facts of this case, the Court concludes that Saxon was an independent contractor rather than an employee of Fannie Mae.  Therefore, Fannie Mae cannot be held liable for Saxon's actions under the doctrine of *respondeat superior*.  Fannie Mae is entitled to summary judgment on Plaintiffs' claims in this respect.

4.  Plaintiffs' Nondelegable Duty Claim Against Fannie Mae

In opposing Fannie Mae's Motion for Summary Judgment, Plaintiffs posit that Fannie Mae owes "nondelegable supervisory duties with respect to the servicing of loans which [Fannie Mae] own[s]."  Mem. in Supp. of Pls.' Resp. in Opp'n to Fannie Mae's Mot. for Summ. J. 18-20 [179].  Plaintiffs reason that Fannie Mae should not be permitted to draft and implement servicing guidelines and then "sit back and allow servicer abuses with full absolution."  *Id.* at 18.  According to Plaintiffs, public policy requires that Fannie Mae "remain liable for ensuring its servicing guidelines are sound and it must maintain oversight . . . ."  *Id.*  Even if the Court were to find that use of a third party loan servicing company created an unsafe or unreasonably dangerous condition giving rise to a nondelegable duty under Mississippi law, the specific undisputed facts of this case do not create liability for a breach of any such nondelegable duty.[3]

---

[3] The Court is also of the opinion that imposing a nondelegable duty upon Fannie Mae to ensure its servicing guidelines are sound and to maintain constant oversight of loan servicing entities would conflict with Congress' intent related to Fannie Mae.  *See Affordable Communities of Missouri v. Fed. Nat. Mortgage Ass'n*, 714 F.3d 1069, 1074 (8th Cir. 2013) ("Congress intended Fannie Mae's operation to impose 'a minimum of adverse effect upon the residential mortgage market and minimum loss to the Federal Government . . . .'") (quoting 12 U.S.C. § 1716(5)).

A nondelegable duty is a duty that cannot be shifted to another by the one upon whom the duty is placed. *Scott Burr Stores Corp. v. Morrow*, 180 So. 741, 743 (Miss. 1938) (quoting *Finkbine Lumber Co. v. Cunningham*, 57 So. 916, 918 (Miss. 1912)). "[T]here are many situations wherein the law views a duty as nondelegable because of its nature and importance." *Fed. Compress & Warehouse Co. v. Swilley*, 171 So. 2d 333, 338 (Miss. 1965) (citation omitted). Consideration should be given to the level of risk to one's safety should there be a breach of the particular duty in question. *Id.* Duties have been described as nondelegable where those duties related to the physical safety of others. *See, e.g.*, *Allcock v. Bannister*, 106 So. 3d 790, 796 (Miss. 2012), *reh'g denied*, Feb. 21, 2013 (noting the nondelegable duty owed by physicians to their patients); *City of Laurel v. Upton*, 175 So. 2d 621, 626 (Miss. 1965) (city had nondelegable duty to maintain streets and sidewalks in a reasonably safe condition); *Lawler v. Skelton*, 130 So. 2d 565, 569 (Miss. 1961) (premises owner may not delegate crop dusting with poisonous insecticides to an independent contractor and avoid liability); *Adams v. Hicks*, 178 So. 484, 486 (Miss. 1938) (noting employers have nondelegable duty to exercise reasonable care to furnish a reasonably safe place for employees to work); *Hercules Powder Co. v. Tyrone*, 124 So. 74, 77 (Miss. 1929), *error overruled*, 124 So. 475 (noting employer has nondelegable duty "as to complicated machinery . . . to furnish [its employees] with safe machinery and appliances with which to do [their] work"). Given the nature of Plaintiffs' allegations in this case and the obvious lack of any threat to their physical safety, the Court declines to find that any duty Fannie Mae may owe

to service the mortgage loans it owns created or rose to the level of a nondelegable duty to Plaintiffs under Mississippi law.  Summary judgment on this claim is appropriate.

     5.    <u>Plaintiffs' Remaining Claims Against Fannie Mae</u>

To the extent that Plaintiffs' Second Amended Complaint can be construed as advancing against Fannie Mae claims for failure to register the Loan with the SEC, claims challenging the validity of the assignments of either the Note or Deed of Trust, claims for violations of either RESPA or the FDCPA, or a claim for fraud, Fannie Mae has moved for summary judgment as to those claims.  Because Plaintiffs have not responded to Fannie Mae's Motion pertaining to these claims, the Court finds that Plaintiffs have abandoned these claims as to Fannie Mae.  *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment."); *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.").

Based on the foregoing, the Court concludes that summary judgment in favor of Fannie Mae on Plaintiffs' claims against it is appropriate.

C.    <u>MERS' Amended Motion for Summary Judgment</u>

Having considered their respective positions, the dispute between MERS and Plaintiffs can be narrowed to two issues.  The parties disagree over the import of the language contained in the Assignment.  Plaintiffs claim that the Assignment is void because it transfers not only the interest MERS had in the Deed of Trust, but

also purports to transfer an interest in the Note.  Plaintiffs also assert that the Assignment is void because it was made without consideration.

The fact that the Assignment from MERS to Saxon purports to transfer not only the Deed of Trust, but also an interest in the Note, does not render the Assignment void.  Under Mississippi law, when an assignment of rights takes place, the assignee obtains no greater right in the thing assigned than the assignor possessed, and simply stands in the shoes of the assignor.  *Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986) (noting that the assignee's rights can rise no higher than assignor's rights) (citations omitted).  The facts are undisputed that MERS never owned an interest in the Note.  Therefore, the legal effect of the November 9, 2011, Assignment and transfer from MERS to Saxon was an assignment of MERS' interest in the Deed of Trust to Saxon; nothing more was or could have been transferred.  *See Connell v. CitiMortgage, Inc.*, Civ. Action No. 11-0443-WS-C, 2012 WL 5511087, at *9 (S.D. Ala. Nov. 13, 2012) (applying Alabama law pertaining to the fact that an assignee only takes as much right as the assignor possessed to conclude that language in an assignment from MERS to CitiMortgage purporting to assign not only MERS' interest in the mortgage but also "the note and indebtedness" was merely superfluous and inoperative).

The more severe problem Plaintiffs face is the reality that, at most, the Assignment would become merely voidable at Saxon's option if the facts established that the Assignment constituted a fraudulent conveyance.  Plaintiffs contend that MERS fraudulently conveyed their "mortgage documents" to other entities

20

representing that consideration had been exchanged.[4]  Second Am. Compl. ¶27 [63].

Under Mississippi law, "a fraudulent conveyance is voidable rather than void *ab*

*initio* . . . ."  *In re Northlake Dev., L.L.C.*, 614 F.3d 140, 144 (5th Cir. 2010) (citing

*Parker v. King*, 108 So. 2d 224, 226 (Miss. 1959)).  Mississippi cases make clear that

voidable contracts are voidable at the option of the party to the contract who was

defrauded.  *Wells Fargo Advisors, LLC v. Runnels*, 126 So. 3d 137, 144 (Miss. Ct.

App. 2013) (indicating the ability to void a voidable contract rests with the parties

to that contract) (citing *Hood ex rel. State v. Barbour*, 958 So. 2d 790, 815 (Miss.

2007)); *Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. Ct. App. 2004) (noting that

contracts entered under circumstances of fraud are voidable by the "innocent

party").  As a result, the Court concludes that even if Plaintiffs could establish a

question of fact as to their fraudulent conveyance claim, Plaintiffs lack standing to

obtain the relief which would be afforded by such a claim.  *See United States v.

Johnson*, 632 F.3d 912, 919-20 (5th Cir. 2011) (noting that [p]rudential standing []

require[s] that a plaintiff 'generally must assert his own legal rights and interests,

and cannot rest his claim to relief on the legal rights or interests of third parties.'")

(citation omitted).  Based on the foregoing analysis, MERS is entitled to judgment

as a matter of law.

## III.   CONCLUSION

Having considered the parties' submissions, the record, and relevant legal

authority, the Court concludes that Plaintiffs have not carried their summary

---

[4] Although Plaintiffs allege that MERS "fraudulently and/or negligently transferred" the Deed of Trust, Plaintiffs have not cited, nor has the Court been able to locate, legal authority recognizing a cause of action for "negligent conveyance" under Mississippi law.

judgment burden with respect to their claims against Fannie Mae and MERS. Fannie Mae and MERS are entitled to summary judgment on Plaintiffs' claims against them.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Fannie Mae's Motion for Summary Judgment [156] is **GRANTED** and Plaintiffs' claims against Fannie Mae are **DISMISSED WITH PREJUDICE**.

**IT IS**, **FURTHER**, **ORDERED AND ADJUDGED** that Defendant Mortgage Electronic Registration Systems, Inc.'s Amended Motion for Summary Judgment [164] is **GRANTED** and Plaintiffs' claims against MERS are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 6th day of March, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE