## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES NEEL and | § | PLAINTIFFS |
| BONNIE NEEL | § | |
| | § | |
| V. | § | CIVIL NO. 1:12cv311-HSO-RHW |
| | § | |
| FANNIE MAE; RESIDENTIAL | § | DEFENDANTS |
| CREDIT SOLUTIONS, INC.; SAXON | § | |
| MORTGAGE SERVICES, INC.; | § | |
| CAPITAL LENDING, LLC; | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC.; | § | |
| and JOHN DOES 1-10 | § | |

### MEMORANDUM OPINION AND ORDER
### GRANTING RESIDENTIAL CREDIT SOLUTIONS, INC.'S
### AMENDED MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Residential Credit Solutions, Inc.'s

("RCS") Amended Motion for Summary Judgment [162] filed on November 25, 2013.

Plaintiffs Charles and Bonnie Neel filed a Response in Opposition [189] to the

Motion on December 16, 2013, and RCS filed its Rebuttal [208] on December 30,

2013.  Having considered the parties' submissions, the record, and relevant legal

authorities, the Court is of the opinion that RCS' Amended Motion should be

granted and Plaintiffs' claims against RCS for invalid transfer, breach of contract,

negligence, fraud, violation of the Real Estate Settlement Procedures Act, 12 U.S.C.

§§ 2601 to 2617, ("RESPA"), and violation of the Fair Debt Collection Practices Act,

15 U.S.C § 1692 ("FDCPA"), should be dismissed with prejudice.

# I. BACKGROUND

A.   Factual Background

This case arises from the servicing of a note executed by Plaintiffs on February 23, 2007 ("the Note") [162-1].  The record establishes beyond dispute the following facts.  Payment of the Note was secured by a Deed of Trust covering Plaintiffs' home located at 7012 Red Bud Lane, Ocean Springs, Mississippi ("the Property").[1]  Dep. of Charles and Bonnie Neel ("Neel Dep.") 7:3-9, 33:4-9 [162-5]; Deed of Trust [162-2].  Capital Lending, LLC ("Capital Lending") was listed as the lender on the Note, and AmTrust was the initial servicer.  Note ¶ 1, Neel Dep. 42:4-11.  Pursuant to the terms of the Deed of Trust, Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as the beneficiary of record, as nominee for Capital Lending, its successors, and assigns, of the Deed of Trust that secured payment of the Note. Deed of Trust 3.  The terms of both the Note and Deed of Trust permitted transfer of both instruments by the lender.  Note ¶ 1, Deed of Trust ¶ 20.

In March 2010, the Note was transferred to Fannie Mae, and Saxon Mortgage Services, Inc. ("Saxon") replaced AmTrust as the servicer of the Loan. Neel Dep. 46:10-15, 49:22-25.  In December 2010, Plaintiffs and Saxon attempted to agree upon the terms for a modification of the Loan, but these efforts were unfruitful, and Plaintiffs rejected the proposed modification by letter dated January 30, 2012.  *Id*. at 112:17-22, 149:12-150:17; Ex. "I" to RCS' Am. Mot. for Summ. J [162-9].  Plaintiffs have not made a payment towards the Loan since June 2011.

---

[1] The Note and the Deed of Trust will occasionally be referred to collectively as the "Loan."

Neel Dep. 170:19-22.  On November 9, 2011, the Deed of Trust was transferred from MERS to Saxon.  Assignment and Transfer of Lien [162-3].  Thereafter, Saxon exchanged correspondence with Plaintiffs' attorney regarding a threatened foreclosure by Saxon.  Neel Dep. 136:20-138:6.

On or about May 1, 2012, RCS replaced Saxon as the servicer of the Loan.[2] *Id.* at 145:17-20, 146:12-147:1; Dep. of Marlon Frazier ("Frazier Dep.") 7:25-8:3 [162-10].  Plaintiffs were in default when RCS began servicing the Loan.  Frazier Dep. 11:22-25.  RCS wrote Plaintiffs on May 1, 2012, informing them that the balance on the Loan was $93,110.03, that Plaintiffs were in default, and that Plaintiffs could contact RCS' attorney to obtain reinstatement information.  Ex. 4 to Mem. in Supp. of Pls.' Resp. in Opp'n to Mot. for Summ. J. ("Resp. in Opp'n") [188-4].  RCS sent a "welcome letter" to Plaintiffs on May 3, 2012, providing Plaintiffs with the number that RCS assigned to the Loan and informing them that RCS was attempting to collect a debt.  Frazier Dep. 12:1-13:20; Ex. 5 to Resp. in Opp'n [188-5].  On May 5, 2012, RCS sent correspondence containing a validation of Plaintiffs' debt and the disclosures required by 15 U.S.C. § 1692g(a), the FDCPA's disclosure provision.  Ex. 7 to Resp. in Opp'n [188-7].  There is no evidence indicating that Plaintiffs responded to this correspondence.

On June 11, 2012, Plaintiffs forwarded correspondence to RCS which they contend constituted a "qualified written request" ("QWR") pursuant to RESPA.  Ex. 9 to Resp. in Opp'n [188-9].  RCS responded on June 19, 2012, informing Plaintiffs

---

[2] As part of the transition of servicing duties from Saxon to RCS, Saxon transferred the Deed of Trust to RCS on June 15, 2012.  Assignment and Transfer of Lien [162-4].

3

that their letter was not determined to be a QWR as defined under RESPA because Plaintiffs did not reference a specific allegation of improper servicing.  Ex. 10 to Resp. in Opp'n [188-10].  RCS also noted that if Plaintiffs questioned a specific servicing event, they should contact RCS in writing.  *Id*.  On July 2, 2012, Plaintiffs, through their attorney, wrote a second letter to RCS which Plaintiffs also allege constituted a QWR.  Ex. 9  to Resp. in Opp'n [188-9].  RCS responded on July 10, 2012, and noted that RCS had again determined that the correspondence did not constitute a QWR because Plaintiffs did not identify a specific allegation of inaccurate servicing.  Ex. 10 to Resp. in Opp'n [188-10].  RCS' response also enclosed a payment history for the time that the loan had been serviced by RCS.  *Id*. This appears to have been the final communication between RCS and Plaintiffs before Plaintiffs sued RCS on September 12, 2012.

On June 26, 2013, RCS wrote Plaintiffs informing them that RCS was placing flood insurance on the Property.  Ex. 12 to Resp. in Opp'n [188-12].  RCS informed Plaintiffs that it must be listed as mortgagee in order for Plaintiffs to be considered in compliance with the requirement that the Property remain insured.  *Id*.  While Plaintiffs purchased a one year policy of flood insurance covering the Property on June 26, 2012, the insurance policy identified Saxon and not RCS as the mortgagee despite the fact that Saxon was no longer servicing the Loan.  Ex. 3 to RCS' Rebuttal Br. in Supp. of Am. Mot. for Summ. J. ("Rebuttal Br.") [208-3].  When Plaintiffs renewed their flood insurance coverage for the policy year beginning June 26, 2013, Saxon was again listed as the mortgagee rather than RCS.  *Id*.

4

At their deposition on September 13, 2013, Plaintiffs repeatedly testified that they had never had a telephone conversation with anyone from RCS and never forwarded any payments to RCS.  Neel Dep. 150:11-17, 196:10-13, 205:19-21. Plaintiffs further testified that RCS "disappeared" shortly after taking over servicing of the Loan.  *Id*. at 203:19-23.  Plaintiffs stated that they "had no complaint against" RCS because they had not dealt with RCS.  *Id*. at 198:15-22. Plaintiffs acknowledged that their complaints in this case were primarily directed toward events that occurred prior to RCS taking over as servicer.  *Id*. at 199:11-14.

B.   Procedural Background

Plaintiffs sued RCS, Saxon, Fannie Mae, MERS, and Capital Lending on September 12, 2012, in the Circuit Court of Jackson County, Mississippi.[3] Complaint [1-2].  On October 12, 2012, the case was removed to this Court on the basis of diversity jurisdiction.  Notice of Removal 1 [1].  Plaintiffs filed an Amended Complaint [38] on March 26, 2013, and a Second Amended Complaint [63] on May 16, 2013.  Although it is not clear, the Second Amended Complaint appears to assert claims for breach of contract, negligence, breach of the duty of good faith and fair dealing, breach of fiduciary duties, modification of the Loan, a mortgage surrender, retraction of all negative credit reporting, conspiracy, fraud, a RESPA violation, and failure to provide Plaintiffs with "adequate disclosures" in violation of the FDCPA. Second Am. Compl. 1-11.

---

[3] Plaintiffs' claims against Fannie Mae and MERS were dismissed with prejudice pursuant to this Court's Memorandum Opinion and Order [213] entered March 6, 2014.

Construing the pleadings in Plaintiffs' favor, they appear to advance claims against RCS for negligence, conspiracy, fraud, breach of contract, a violation of RESPA, a violation of the FDCPA, and that RCS' receipt of the Note was pursuant to an invalid transfer. *Id*. at ¶¶ 14, 17, 18, 28, 29, 31, 32, 35, and 45. RCS now moves for summary judgment as to all claims asserted against it by Plaintiffs.

## II. <u>DISCUSSION</u>

A.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citation omitted). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby,*

6

*Inc.*, 477 U.S. 242, 249 (1986)).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Analysis

1.    Plaintiffs' Claim Challenging the Assignment and Transfer to RCS

RCS takes the position that the assignments and transfers of the Note and Deed of Trust cannot be attacked by Plaintiffs because they were not parties to those transactions.  RCS' Mem. in Supp. of Summ. J. 4-5 [163].  Plaintiffs reject the validity of the assignment and transfer from Saxon to RCS on the basis that the prior assignment and transfer from MERS to Saxon was invalid.  Resp. in Opp'n 5.

On March 6, 2014, the Court entered its Memorandum Opinion and Order Granting Fannie Mae's Motion for Summary Judgment and Granting Mortgage Electronic Registration Systems, Inc.'s Amended Motion for Summary Judgment [213].  In concluding MERS was entitled to summary judgment, the Court addressed Plaintiffs' challenge to the validity of the assignment and transfer from MERS to Saxon and concluded that Plaintiffs lacked standing to challenge the assignment and transfer.  *Id*. at 19-21.  The Court is of the opinion that its reasons for granting MERS' Motion for Summary Judgment as to Plaintiffs' claim challenging the assignment and transfer from MERS to Saxon apply with equal force to Plaintiffs' claim challenging the assignment and transfer from Saxon to RCS.  Plaintiffs lack standing to challenge the validity of the assignment and transfer because Plaintiffs were not parties to that transaction.  RCS is entitled to

7

summary judgment on Plaintiffs' claim challenging the assignment and transfer from Saxon to RCS.

 2. <u>Plaintiffs' Breach of Contract Claim Against RCS</u>

 RCS seeks summary judgment as to Plaintiffs' breach of contract claims asserting that Plaintiffs have failed to identify any provision of either the Note or Deed of Trust that RCS breached.  RCS' Mem. in Supp. of Summ. J. 5-6 [163]. Relying on the Declaration of Bonnie Neel attached to their opposition brief, Plaintiffs maintain that summary judgment is improper because RCS has breached the duty of good faith and fair dealing implied in the Deed of Trust.  Resp. in Opp'n 5-8.  Plaintiffs also claim that RCS "force placed" flood insurance on the Property and thus breached the explicit terms of the Deed of Trust.  *Id*. at 7.  In rebuttal, RCS contends that Plaintiffs cannot use the Declaration of Bonnie Neel to contradict their prior sworn deposition testimony, which revealed that the Neels had no complaints against RCS.  Rebuttal Br. 3-4.  RCS further reasons that the Deed of Trust permitted it to procure flood insurance for the Property because Plaintiffs failed to have RCS listed as the mortgagee on the policy.  *Id*. at 5.

 a. <u>Breach of the Implied Duty of Good Faith and Fair Dealing</u>

 The Fifth Circuit Court of Appeals has made clear that a nonmovant cannot manufacture a question of fact on summary judgment by relying on an affidavit which contradicts the nonmovant's prior sworn testimony.  *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[T]he nonmovant cannot defeat . . . summary judgment by submitting an affidavit which directly contradicts,

without explanation, his previous testimony.") (citing *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)).  In her Declaration, Bonnie Neel reveals for the first time that RCS informed Plaintiffs in a telephone conversation that Plaintiffs were required to pay more than $12,000 to reinstate the Loan.  Decl. of Bonnie Neel ¶¶ 34-35 [188-8].  This revelation is contrary to Plaintiffs' prior sworn testimony that they never had a telephone conversation with RCS, and no explanation for this contradiction is offered.  Plaintiffs rely exclusively on this revelation to oppose RCS' Amended Motion for Summary Judgment as to their claim for breach of the implied duty of good faith and fair dealing.  Resp. in Opp'n 6.  The Court finds that this portion of Bonnie Neel's Declaration contradicts Plaintiffs' prior sworn testimony and cannot be used to create a question of fact

Turning to the merits of Plaintiffs' breach of contract claim predicated on an alleged breach of the implied duty of good faith and fair dealing, all contracts in Mississippi "contain an implied covenant of good faith and fair dealing in performance and enforcement."  *Gen. Motors Acceptance Corp. v. Baymon*, 732 So. 2d 262, 269 (Miss. 1999) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)) (quotations omitted).  "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness."  *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 657 (S.D. Miss. 2013) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 987 (Miss. 2004)) (quotations omitted).  "Bad judgment or negligence does not constitute bad faith."  *Id*.  "Instead, 'bad faith implies some conscious wrongdoing because of dishonest

9

purpose or moral obliquity.'"  *Id*. (quoting *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (Miss. Ct. App. 2003)).

In *Montgomery*, the plaintiff-mortgagors asserted that their mortgage loan servicer breached the implied duty of good faith and fair dealing.  *Id*. at 646.  This claim was based on allegations that the servicer steered the mortgagors into a modification against their will, denied the modification due to insufficient income, failed to apply $28,000 in payments made by the mortgagors, required the mortgagors to send and resend documents because the servicer could not keep track of the documents, and foreclosed on but did not take possession of the mortgagors' home.  *Id*. at 645-646.  In granting the servicer's motion for summary judgment, the court concluded that these alleged facts might create a jury issue as to the mortgagors' negligence claim but did not demonstrate the conscious wrongdoing and dishonest purpose necessary to create a jury question as to the claim for breach of the implied duty of good faith and fair dealing.  *Id*. at 657.

Taking the pertinent evidence in a light most favorable to Plaintiffs, an attorney for RCS wrote to Plaintiffs on May 1, 2012, informing them of the fact that RCS was now the servicer of the Loan and that Plaintiffs were in default in the amount of $93,110.03.  Ex. 4 to Resp. in Opp'n [188-4].  RCS next forwarded correspondence to Plaintiffs dated May 3, 2012, informing Plaintiffs that RCS was now the servicer of the Loan, providing Plaintiffs with the number RCS assigned to the Loan, providing contact information for RCS, and explaining how Plaintiffs could request information from RCS.  Ex. 5 to Resp. in Opp'n [188-5].  RCS then

sent correspondence dated May 5, 2012, providing the current balance for the principal, interest, fees, and the escrow account.  Ex. 7 to Resp. in Opp'n [188-7]. Plaintiffs forwarded what they contend was a QWR to RCS on June 11, 2012, and RCS responded on June 19, 2012, informing Plaintiffs that it determined the request was not a QWR as defined under RESPA and setting out what was necessary for such a request.  Exs. 9 and 10 to Resp. in Opp'n [188-9] [188-10].  On July 2, 2012, Plaintiffs, through their counsel, forwarded a second letter that they claim constituted a QWR.  Ex. 9 to Resp. in Opp'n [188-9].  RCS responded on July 10, 2012, informing Plaintiffs that RCS again determined that the letter was not a QWR as defined under RESPA and declining to provide the requested information. Ex. 10 to Resp. in Opp'n [188-10].  Plaintiffs later received a letter dated June 26, 2013, in which RCS informed them that it placed flood insurance on the Property because RCS had not received any proof that Plaintiffs were in compliance with the requirement that they maintain flood insurance on the Property.  Ex. 12 to Resp. in Opp'n [188-12].  At their deposition, Plaintiffs testified they did not have any telephone conversations with anyone from RCS, and that they had no complaints as to RCS.  Neel Dep. 150:11-17, 196:10-13, 198:15-22, 205:19-21.

Just as in *Montgomery*, these undisputed facts do not support a claim that RCS acted with "'conscious wrongdoing' motivated by any 'dishonest purpose'" which is required to establish a claim for breach of the implied duty of good faith and fair dealing.  *Id*. at 657 (citing *Lippincott*, 856 So. 2d at 468).  To the extent that RCS may have incorrectly determined that the two purported QWRs submitted by

Plaintiffs were not QWRs as defined under RESPA, the Court is of the opinion that RCS' determination does not rise to the level of conscious wrongdoing under the facts presented.  While Plaintiffs fiercely dispute that RCS was permitted under the terms of the Deed of Trust to place flood insurance on the Property, Plaintiffs have not brought forward any evidence to suggest that RCS' decision to place flood insurance on the Property arose from a dishonest purpose.  RCS is entitled to summary judgment as to Plaintiffs' breach of contract claim to the extent that claim is predicated on an alleged breach of the implied duty of good faith and fair dealing.

### b. Breach of the Explicit Terms of the Deed of Trust

The Deed of Trust requires that Plaintiffs keep the Property insured against hazards and floods.  Deed of Trust 5 [162-2].  The Deed of Trust provides that "[a]ll insurance policies required by Lender . . . shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee."  *Id*. at 6.

At the time RCS placed flood insurance on the Property in June 2013, the flood insurance obtained by Plaintiffs named Saxon as the mortgagee and did not name any additional loss payees.  Flood Policy Declarations, Policy Period 06/26/2013 – 06/26/2014 [208-3].  Plaintiffs appear to take the position that simply having insurance on the Property, notwithstanding the fact that the insurance did not comply with the specific terms of the Deed of Trust, was enough to preclude RCS from placing flood insurance on the Property.  Plaintiffs do not cite any legal

authority in support of this theory,[4] however, and the Court finds that this position is directly contrary to the terms of the Deed of Trust.  Deed of Trust 5.  Having considered the summary judgment evidence pertaining to Plaintiffs' claim for breach of contract based on an alleged breach of the explicit terms of the Deed of Trust requiring the Property to remain insured, the Court is of the opinion that Plaintiffs have not demonstrated that a jury question exists as to this claim.

### c. Overcharge for Lender Placed Insurance

To the extent that Plaintiffs argue that a question of fact exists as to whether RCS breached the terms of the Deed of Trust by overcharging for lender-placed flood insurance, this argument is not well-taken.  When they executed the Deed of Trust, Plaintiffs "acknowledge[d] that the cost of the insurance coverage" obtained by the lender "might significantly exceed the cost of insurance that Borrower could have obtained."  Deed of Trust 6.  Plaintiffs do not cite any evidence supporting their claim that the flood insurance they purchased on the Property was "sufficient." Resp. in Opp'n 8.  Plaintiffs similarly do not cite factual evidence or legal authority supporting their conclusory assertion that the cost of the flood insurance obtained by RCS was "unreasonable."  *Id.*

---

[4] Plaintiffs' reliance upon *Hutcherson v. JP Morgan Chase Bank, N.A.*, No. 2:11-cv-154-KS-MTP, 2012 WL 37393, at *4 (S.D. Miss. Jan. 6, 2012), is misplaced.  The procedural posture of that decision was a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id.* at *1. In passing upon the plaintiff's claims, the court concluded only that the plaintiff's allegation that the "[d]efendant force-placed insurance when [the p]laintiff had already obtained sufficient coverage" was sufficient to survive a motion to dismiss.  *Id.* at *4.  Faced with a fundamentally different burden in opposition to RCS' Amended Motion for Summary Judgment, Plaintiffs must do more than emphasize the sufficiency of their allegations and must bring forth evidence of a disputed issue of material fact pertaining to the claim that RCS breached the Deed of Trust by placing flood insurance on the Property.

Based on all of the foregoing, the Court concludes that RCS is entitled summary judgment as to Plaintiffs' breach of contract claim.

3.   <u>Negligence Claim</u>

RCS maintains that summary judgment is proper as to Plaintiffs' negligence claim because they have failed to proffer evidence that RCS breached any of the terms of the Deed of Trust.  Rebuttal Br. 5.  Plaintiffs counter that the Deed of Trust placed a duty of reasonable care upon RCS to fulfill its contractual obligations, and RCS breached this duty of care by placing flood insurance on the Property, failing to correct Saxon's errors, and failing to provide accurate information regarding the status and pay-off of the Loan.  Resp. in Opp'n 8-9.

Under Mississippi law, actionable negligence requires the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, damages, and a causal connection between the breach and the damages.  *Grisham v. John Q. Long V.F.W. Post, No. 4057, Inc.*, 519 So. 2d 413, 416 (Miss. 1988) (citations omitted).  A duty underlying a negligence claim may arise either from a contractual relationship or by operation of law when one sets out to do some act.  *Montgomery*, 955 F. Supp. 2d at 649 (quoting *River Prod. Co. v. Baker Hughes Prod. Tools, Inc.*, 98 F.3d 857, 859 (5th Cir. 1996) (applying Mississippi law)).  In opposing RCS' Amended Motion for Summary Judgment, Plaintiffs claim that RCS breached the "duty of care in fulfilling one's contractual obligations."  Resp. in Opp'n 8.

At their deposition, Plaintiffs failed to identify any complaints or issues they had with RCS or its servicing of the Loan.  Neel Dep. 198:15-22, 199:11-14, 203:24-

14

204:11.  Plaintiffs acknowledged that they have not made a payment since June 2011, nearly one year prior to RCS becoming involved.  *Id*. at 170:19-22.  Plaintiffs testified that they "had no complaint against" RCS because Plaintiffs had not dealt with RCS.  *Id*. at   To the extent that Plaintiffs contend RCS acted negligently in not removing the lender-placed flood insurance, it is undisputed Plaintiffs failed to have RCS listed as the mortgagee on the flood insurance they obtained themselves.  This was contrary to the terms of the Deed of Trust, thereby permitting RCS to procure flood insurance to protect its security interest.  To the extent that Plaintiffs offer the Declaration of Bonnie Neel to create a question of fact surrounding an alleged telephone conversation between Bonnie Neel and RCS, the Declaration contradicts Plaintiffs' prior sworn deposition testimony and will not be considered by this Court.  *Albertson*, 749 F.2d at 228 (citations omitted).  Given the lack of evidence supporting a negligence claim against RCS, the Court is of the opinion that summary judgment in favor of RCS as to Plaintiffs' negligence claim is warranted.

    4.   <u>Fraud Claim</u>

RCS moves for summary judgment as to Plaintiffs' fraud claim reasoning that Plaintiffs "have failed to state any particular facts or circumstances to support their claims of fraud . . . ."  RCS' Mem. in Supp. of Am. Mot. for Summ. J. 7 [163].  Plaintiffs point to several allegations from the Second Amended Complaint which they claim demonstrate that they have sufficiently pleaded a fraud claim against RCS.  Resp. in Opp'n 14-19.

Having considered RCS' argument with respect to the fraud claim, the Court finds that this argument should be treated as one seeking judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See Shorty v. Liddell*, No. 4:07-cv-207-M-A, 2008 WL 5111003, at *1 (N.D. Miss. Dec. 2, 2008), *aff'd*, 356 F. App'x 769 (5th Cir. 2009) (treating motion for summary judgment as a motion for judgment on the pleadings given the motion's brevity); *Williams v. Cessna Aircraft Corp.*, 376 F. Supp. 603, 605 (N.D. Miss. 1974) (treating motion for summary judgment as a motion for judgment on the pleadings where motion was not based on evidentiary matters outside the pleadings and the motion was not filed at a time that would cause a delay of the trial). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court will accept as true all well-pleaded facts. *Id.* "The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).

"The elements of a fraudulent or intentional misrepresentation are: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its

16

falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Fikes v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 815, 821 (N.D. Miss. 2011) (citing *Trim v. Trim*, 33 So. 3d 471, 478 (Miss. 2010)). Allegations supporting each of these elements must be pleaded with particularity. Fed. R. Civ. P. 9(b).  Having closely examined Plaintiffs' allegations, the Court concludes that Plaintiffs have not stated a claim for fraud against RCS.  While Plaintiffs make broad, general allegations as to intentional misapplication of payments by Saxon, it is not disputed that Plaintiffs have not made a single payment to RCS.  Although Plaintiffs vaguely claim that "the servicers have engaged in fraud" by charging them for lender-placed insurance, the Court has already concluded that RCS was entitled to place flood insurance on the Property. Plaintiffs point to allegations made against MERS and Saxon, but these allegations do not state with particularity a claim for fraud against RCS.  The Court thus concludes that RCS is entitled to judgment on the pleadings as to the fraud claim.

     5.    <u>RESPA Claim</u>

     RCS asserts it is entitled to summary judgment as to Plaintiffs' RESPA claim because there is no factual basis for a RESPA claim.  RCS' Mem. in Supp. of Summ. J. 6 [163].  RCS emphasizes that Plaintiffs have failed to allege that the Loan was "federally related" and reasons that Plaintiffs have failed to state a claim as a result.  *Id.* at 5-6.  Plaintiffs respond that their allegations against Fannie Mae were

sufficient to indicate the Loan was a "federally related mortgage loan." Resp. in Opp'n 9-12. Plaintiffs further posit that the facts reveal that RCS violated not only RESPA but also the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 to 1681x,[5] when it declined to provide various information requested by Plaintiffs and when it reported negative credit information concerning the Plaintiffs. *Id.* RCS counters that Plaintiffs' RESPA claim fails because Plaintiffs must allege that their mortgage was "federally related," and merely relying on allegations asserted against Fannie Mae is insufficient.[6] Rebuttal Br. 6. RCS also maintains that Plaintiffs have not demonstrated that the written requests for information Plaintiffs sent to RCS were QWRs as defined by RESPA. *Id.*

Having considered the parties' positions, the Court concludes that Plaintiffs have not pleaded that the Loan was "federally related" as that phrase is defined under RESPA and have thus failed to state a claim under RESPA. "[A] plaintiff who does not specifically allege that his mortgage loan was a 'federally related mortgage loan' in his complaint does not have standing to assert a RESPA claim." *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 836 (S.D. Miss. 2011) (citing *Middleton v. Ameriquest Mortgage Co.*, No. 1:10-cv-146-LG-RHW, 2010 WL 2653293, at *4 (S.D. Miss. June 24, 2010)). A review of the Second Amended

---

[5] Plaintiffs' attempt to raise a claim pursuant to the FCRA for the first time in opposition to RCS' Motion for Summary Judgment is not well-taken. "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). A fair reading of the Second Amended Complaint reveals that Plaintiffs have not asserted a claim under the FCRA. Therefore, any FCRA claim Plaintiffs assert in opposition to RCS' Motion for Summary Judgment is not properly before the Court.

[6] The Court treats RCS' argument, to the extent predicated on Plaintiffs' alleged failure to plead a RESPA claim, as one made pursuant to Rule 12(c).

Complaint reveals Plaintiffs have not alleged that the Loan was a "federally related mortgage loan" as defined in 12 U.S.C. § 2602 (2012).  The mere fact that Plaintiffs named Fannie Mae as a Defendant and alleged that Fannie Mae was actually "calling the shots" is, alone, insufficient to allege or establish that the Loan was a "federally related mortgage" loan.[7]  *See Loraso v. JP Morgan Chase Bank, N.A.*, No. 13-4734, 2013 WL 5755638, at *4, 8 (E.D. La. Oct. 23, 2013) (concluding plaintiff failed to allege mortgage was "federally related" notwithstanding plaintiff's arguments that defendant was not arguing the mortgage was, in fact, not "federally related" and that the pleadings had "adequately put [the defendant] on notice of the claims made against it").  RCS is entitled to judgment on the pleadings as to Plaintiffs' purported RESPA claim.

    6.    <u>FDCPA Claim</u>

    RCS seeks summary judgment as to Plaintiffs' FDCPA claim on the sole ground that RCS cannot be considered a "debt collector" under the FDCPA.  RCS' Mem. in Supp. of Summ. J. 6 [163].  Plaintiffs posit that summary judgment on this ground is not warranted because RCS is considered a "debt collector" under the FDCPA because Plaintiffs were in default at the time that the Deed of Trust was assigned to RCS.  Resp. in Opp'n 13-14.

    "The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208

---

[7] The record reveals that on January 25, 2013, Plaintiffs were put on notice of Defendants' reliance upon cases requiring parties asserting a RESPA claim to allege that the mortgage loan at issue was "federally related."  Mem. in Supp. of Mot for J. on the Pleadings or, alternatively, Mot. for Summ. J. 13 [21].  Despite amending the Complaint on March 26, 2013, and again on May 16, 2013, Plaintiffs did not include allegations that the Loan was a "federally related mortgage loan."

(5th Cir. 1985); *see* 15 U.S.C.A. § 1692(e) (2012). "The FDCPA defines a debt collector as 'any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another.'" *Id.* (quoting 15 U.S.C. § 1692a(6)). "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Id.* Based on this definition, "[i]f [RCS] took the mortgage after [Plaintiffs'] default, it would be a debt collector." *Castrillo v. Am. Home Mortgage Servicing, Inc.*, 670 F. Supp. 2d 516, 524 (E.D. La. 2009). The undisputed facts indicate that at the time Plaintiffs' Deed of Trust was transferred to RCS, Plaintiffs were in default and RCS thus could be considered a "debt collector" subject to the FDCPA.

Notwithstanding the fact that RCS could be considered a "debt collector" under the FDCPA, the Court is of the opinion that RCS is entitled to summary judgment. To prevail on a claim for civil liability pursuant to the FDCPA, a plaintiff "must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995) (citation omitted). Plaintiffs' only allegation in support if their FDCPA claim is that "Defendants failed at all times to provide [Plaintiffs] with adequate disclosures as required by the [FDCPA]." Second Am. Compl. ¶ 29. Leaving aside the first two

elements, there is no dispute that Plaintiffs cannot satisfy the third element.

Plaintiffs testified that they had no complaints with RCS and that their complaints

were primarily directed toward events that occurred prior to RCS taking over as

servicer. Neel Dep. 198:15-22, 199:11-14. The correspondence Plaintiffs submit in

opposition to RCS' Amended Motion for Summary Judgment further indicates that

the dispute is not with RCS because that correspondence demonstrates that RCS

supplied Plaintiffs with the FDCPA's required disclosures.[8] Exs. 4, 5, 7, 10, and 12

to Resp. in Opp'n [188-4], [188-5], [188-7], [188-10], and [188-12]. The Court

concludes that Plaintiffs' FDCPA claim against RCS predicated on an alleged

failure to provide the disclosures required by the FDCPA does not present a jury

question, and RCS is entitled to summary judgment. *Antoine v. J.P. Morgan Chase

Bank*, 757 F. Supp. 2d 19, 22-23 (D. D.C. 2010) (concluding debt collector was

entitled to summary judgment notwithstanding consumer's allegation that they did

not receive communications from debt collector where there was no factual dispute

debt collector mailed consumer communications that complied with the FDCPA's

disclosure requirements).

### III. <u>CONCLUSION</u>

Having considered the parties' submissions, the record, and relevant legal

authorities, the Court concludes that Plaintiffs have not carried their summary

---

[8] *See* 15 U.S.C. § 1692e(11) (requiring initial communication with Plaintiffs to include a statement that RCS was a "debt collector . . . attempting to collect a debt and that any information obtained will be used for that purpose" and requiring RCS to disclose "in subsequent communications that the communication is from a debt collector") *and* 15 U.S.C. § 1692g(a) (requiring RCS to send within five days of initial communication a notice informing Plaintiffs of the amount of the debt, the creditor, that Plaintiffs had thirty days to contest the validity of the debt, that if Plaintiffs contested the validity that RCS would send Plaintiffs verification of the debt, and that if Plaintiffs asked within thirty days for the name and address of the original creditor RCS would forward that information).

judgment burden with respect to their claims against RCS for invalid transfer, breach of contract, negligence, fraud, violation of RESPA, and violation of the FDCPA.  RCS is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant RCS' Amended Motion for Summary Judgment [162] is **GRANTED** as provided above. Plaintiffs' claims against RCS are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 12th day of March, 2014.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE