## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES NEEL and<br>BONNIE NEEL | §<br>§<br>§ | PLAINTIFFS |
| V. | §<br>§ | CIVIL NO. 1:12cv311-HSO-RHW |
| FANNIE MAE; RESIDENTIAL<br>CREDIT SOLUTIONS, INC.; SAXON<br>MORTGAGE SERVICES, INC.;<br>CAPITAL LENDING, LLC;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>and JOHN DOES 1-10 | §<br>§<br>§<br>§<br>§<br>§<br>§ | DEFENDANTS |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SAXON MORTGAGE SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO SAXON

BEFORE THE COURT is Defendant Saxon Mortgage Services, Inc.'s ("Saxon") Motion for Summary Judgment [147], Plaintiffs Charles and Bonnie Neel's Response in Opposition [187], and Saxon's Rebuttal [205]. Also before the Court is Plaintiffs' Motion for Partial Summary Judgment as to Saxon [159], Saxon's Response in Opposition [185], and Plaintiffs' Rebuttal [206]. Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion that Saxon's Motion should be granted in part as to Plaintiffs' claims for fraud, breach of fiduciary duty, violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA"), violation of the Fair Debt Collection Practices Act, 15 U.S.C § 1692 ("FDCPA"), and violation of the Home Affordable Modification Program ("HAMP"), but denied in part as to

1

Plaintiffs' claims for breach of contract and negligence.  The Court further finds that Plaintiffs' Motion for Partial Summary Judgment should be denied.

## I. BACKGROUND

A.   Factual Background

This civil action arises from the servicing of a note executed by Plaintiffs on February 23, 2007 ("the Note") [147-1].  The record establishes beyond dispute the following facts.  Payment of the Note was secured by a Deed of Trust covering Plaintiffs' home located at 7012 Red Bud Lane, Ocean Springs, Mississippi ("the Property").[1]  Dep. of Charles and Bonnie Neel ("Neel Dep.") 7:3-9, 33:4-9 [162-5]; Deed of Trust [147-2].  Capital Lending, LLC ("Capital Lending") was listed as the lender on the Note, and AmTrust was the initial servicer.  Note ¶ 1, Neel Dep. 42:4-11.

At the time they executed the Loan, Plaintiffs also executed an Initial Escrow Account Waiver ("Initial Waiver").  Ex. 1 to Pls.' Mot. for Partial Summ. J. [159-1].  Pursuant to the terms of the Initial Waiver, Plaintiffs promised to pay the taxes and assessments on the Property and premiums for any and all property insurance required by Saxon.  *Id.*  In executing the Initial Waiver, Plaintiffs understood that their failure to pay insurance premiums "may result in [l]ender placement of insurance at a potentially higher cost . . . ."  *Id.*

Pursuant to the terms of the Deed of Trust, Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as the beneficiary of record, as nominee for Capital Lending, its successors, and assigns, of the Deed of Trust that secured

---

[1] The Note and the Deed of Trust will occasionally be referred to collectively as the "Loan."

payment of the Note. Deed of Trust 3.  The terms of both the Note and Deed of Trust permitted transfer of both instruments by the lender.  Note ¶ 1, Deed of Trust § 20.  In March 2010, the Note was transferred to Fannie Mae, and Saxon replaced AmTrust as the Loan servicer.  Neel Dep. 46:10-15, 49:22-25.

Plaintiffs timely made their Loan payments in March 2010 and April 2010. Neel Dep. 96:5-14, Ex. 4 to Pls.' Mot. for Partial Summ. J. [159-4], *and* Ex. "T" to Saxon's Rebuttal Br. in Supp. of Mot. for Summ. J. ("Saxon's Rebuttal Br.") [205-1]. It is undisputed that Plaintiffs did not make the May or June payments.  Ex. 4 to Pls.' Mot. for Partial Summ. J. [159-4].  In July 2010, Plaintiffs applied for a loan modification.  Neel Dep. 50:14-23, 75:5-7.  Plaintiffs were approved for a trial loan modification on August 13, 2010.  Ex. "K" to Saxon's Mot. for Summ. J. [147-11]. After making payments pursuant to the terms of the trial modification, Saxon offered Plaintiffs a permanent modification, but Plaintiffs rejected this offer on January 30, 2011.  Ex. "S" to Saxon's Mot. for Summ. J. [147-19].  Plaintiffs asked that the Loan be returned to its original terms.  Neel Dep. 112:17-22.  Shortly thereafter, Plaintiffs made a payment on February 7, 2011, to Saxon in the amount of $6,348.88 which, according to Plaintiffs, represented the escrow balance and late fees accrued during the modification.  *Id*. at 109:10-110:5, 111:11-112:12.

With respect to the insurance Plaintiffs agreed to keep on the Property at all times, it is undisputed that Plaintiffs allowed the Property's flood insurance to lapse from March 22, 2010, to June 22, 2010.  Dep. of Bernard Jay Patterson ("Patterson Dep.") 49:14-16 [147-9].  Saxon learned of this lapse, and, at some point during the

lapse, obtained flood insurance for the Property.  Ex. "V" to Saxon's Rebuttal Br. [205-3].  As a result of the lapse in flood insurance, Saxon forwarded Plaintiffs an "Annual Escrow Account Disclosure Statement" dated June 19, 2010.  Ex. "F" to Saxon's Mot. for Summ. J. [147-6].  This document provided Plaintiffs with a statement of the balance of the Loan's escrow account and updated payment information.  *Id*.  On June 22, 2010, however, Plaintiffs purchased flood insurance for the Property.  Neel Dep. 52:19-24.  Approximately seven months after the lapse in flood insurance, Plaintiffs allowed the hazard insurance on the Property to lapse from February 5, 2011, through February 15, 2011.  Patterson Dep. 49:5-13.  Saxon learned of this lapse, and although Plaintiffs subsequently procured hazard insurance, Saxon obtained hazard insurance on the Property for the lapse period.  Ex. "N" to Saxon's Mot. for Summ. J. [147-14].

In March 2011, Saxon adjusted Plaintiffs' Loan to its original terms as requested by Plaintiffs when they rejected the modification.  Ex. "K" to Saxon's Mot. for Summ. J. [147-11].  As stated by Saxon, Plaintiffs made "sporadic" payments thereafter, and the Loan remained in default.  Ex. "T" to Saxon's Rebuttal Br. [205-1].  Plaintiffs deny that the Loan was in default and contend that once the Loan was returned to its original terms, the escrow account should have been closed.  Neel Dep. 124:8-13.  In their efforts to convince Saxon that the escrow account should be closed, Plaintiffs repeatedly forwarded proof of the flood and hazard insurance that they procured for the Property.  *Id*. at 122:19-123:21.

On May 1, 2012, Saxon ceased servicing the Loan and Residential Credit Solutions, Inc. ("RCS") took over as the servicer of the Loan.  Ex. "T" to Saxon's Rebuttal Br. [205-1].  To date, Plaintiffs' home has not been foreclosed upon by Saxon or any other entity.  Neel Dep. 172:17-19.

B.    Procedural Background

Plaintiffs sued Saxon, Fannie Mae, MERS, Capital Lending, and RCS on September 12, 2012, in the Circuit Court of Jackson County, Mississippi.[2] Complaint [1-2].  On October 12, 2012, the case was removed to this Court on the basis of diversity jurisdiction.  Notice of Removal 1 [1].  Plaintiffs filed an Amended Complaint [38] on March 26, 2013, and a Second Amended Complaint [63] on May 16, 2013.  The Second Amended Complaint appears to assert claims for breach of contract, negligence, breach of the duty of good faith and fair dealing, breach of fiduciary duty, modification of the Loan, a mortgage surrender, retraction of all negative credit reporting, conspiracy, fraud, a RESPA violation, and failure to provide Plaintiffs with "adequate disclosures" in violation of the FDCPA.  Second Am. Compl. 1-11.

Construing the pleadings in Plaintiffs' favor, they appear to advance claims against Saxon for breach of contract, negligence, conspiracy, fraud, a violation of RESPA, a violation of the FDCPA, and a violation of HAMP.  *Id.* at ¶¶ 14, 17, 18, 22, 23, 28, 29, 31, 32, and 35.  Saxon moves for summary judgment as to all claims

---

[2] Plaintiffs' claims against Fannie Mae and MERS were dismissed with prejudice on March 6, 2014 [213].  Plaintiffs' claims against RCS were dismissed with prejudice on March 12, 2014 [214].

asserted against it by Plaintiffs, and Plaintiffs seek summary judgment as to Saxon on their breach of contract, negligence, fraud, and breach of fiduciary duty claims.

## II. DISCUSSION

### A.   Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure states that a court shall grant summary judgment if the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact "exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'"  *Mudrick v. Cross Equip. Ltd.*, 250 F. App'x 54, 56 (5th Cir. 2007) (quoting *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000)).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."  *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

When the moving party bears the burden of proof on the relevant issues at trial, the moving party "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 90, 94 (5th Cir. 1986) (emphasis in original). "The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 772 (S.D. Tex. 2009) (citing *Fontenot*, 780 F.2d at 94).

B.    <u>Analysis</u>

1.    <u>Breach of Contract Claim</u>

Saxon argues that it is entitled to summary judgment as to Plaintiffs' breach of contract claim because Plaintiffs did not identify any terms of the Loan that Saxon is alleged to have breached and have "failed to state any plausible contract claims."  Mem. in Supp. of Mot. for Summ. J. 15 [148].  Plaintiffs oppose Saxon's Motion by contending Saxon breached the Deed of Trust and Initial Waiver by failing to revoke the Initial Waiver as provided for in either document, by continuing to bill for lender placed insurance despite the fact that Plaintiffs were paying for insurance directly, and by failing to apply Plaintiffs' payments correctly. Mem. in Supp. of Pls.' Resp. in Opp'n ("Pls.' Resp. in Opp'n") 3, 7, 26-27 [187].  In rebuttal, Saxon maintains that it is undisputed that all payments were applied correctly.  Saxon's Rebuttal Br. 10 [205].  Saxon further asserts that it properly notified Plaintiffs of its decision to revoke the Initial Waiver, and the Deed of Trust

7

allowed Saxon to revoke the Initial Waiver and proceed with paying the taxes for, and placing insurance on, the Property. *Id*. at 3-4, 7-10.

In their Motion for Partial Summary Judgment, Plaintiffs contend that they are entitled to judgment as a matter of law on their breach of contract claim because Saxon created an escrow account despite failing to properly revoke the Initial Waiver, impermissibly placed insurance on the Property in contravention of both the Initial Waiver and Deed of Trust, and incorrectly applied and inappropriately reversed payments made by Plaintiffs. Mem. in Supp. of Pls.' Mot. for Partial Summ. J. 14-21 [160]. Saxon responds by arguing that Plaintiffs are not entitled to judgment as a matter of law on their breach of contract claim because Saxon applied all of Plaintiffs' payments correctly, and Saxon was entitled to create an escrow account and did so properly under the terms of the Loan. Mem. in Supp. of Resp. in Opp'n to Mot. for Summ. J. ("Saxon's Resp. in Opp'n") 8-11, 13 [185].

Having carefully considered the parties' respective submissions, the record, and the relevant legal authorities, the Court is of the opinion that disputed issues of material fact preclude summary judgment in favor of either Saxon or Plaintiffs on the breach of contract claim. These questions of fact emanate from the Initial Waiver executed by Plaintiffs which provided, among other things, that they agreed to pay the taxes on the Property and premiums for any and all insurance required by Saxon. Ex. 1 to Pls.' Mot. For Summ. J. 1 [159-1]. Pursuant to the Initial Waiver, Plaintiffs' "failure to pay insurance premiums may result in [lender-placed] insurance at a potentially high cost . . . ." *Id*. The Deed of Trust, moreover, states

that if Saxon allows Plaintiffs to pay either the Property's taxes or insurance premiums directly and Plaintiffs fail to do so, Saxon was entitled to "revoke the [Initial W]aiver . . . at any time by a notice given in accordance with Section 15" of the Deed of Trust  Deed of Trust 4-5, § 3.  Upon Saxon's revocation of the Initial Waiver, Saxon was permitted to establish an escrow account and Plaintiffs would be required to pay into the escrow account sums covering the amounts due for taxes and insurance placed on the Property by Saxon.  *Id*.

Beyond the reference to Section 15,[3] the Deed of Trust does not specify the kind, form, or type of notice required to revoke the Initial Waiver.  The only evidence Saxon has presented to support its position that it provided Plaintiffs with notice of Saxon's decision to revoke the Initial Waiver appears to be the Annual Escrow Account Disclosure Statement for the year beginning August 1, 2010, and ending July 31, 2011, which makes no specific mention of or reference to a revocation of the Initial Waiver.  Ex. 6 to Saxon's Mot. for Summ. J. 1 [147-6]. Plaintiffs contend that this document was not sufficient to constitute notice that Saxon had revoked the Initial Waiver.  Pls.' Resp. in Opp'n 3 [187].  Saxon posits that it was required to send nothing more.  Saxon's Rebuttal Br. 3 [205].  The only legal authority Saxon has cited to the Court to argue that Saxon had authority to establish an escrow account does not address this precise issue.  *See Teeuwissen v. JP Morgan Chase Bank, N.A.*, No. 3:11-cv-46-TSL-FKB, 2011 WL 5593164, at \*2 (S.D. Miss. Nov. 17, 2011) (holding that security instrument containing language

---

[3] Section 15 of the Deed of Trust provides that all notices given by Saxon must be in writing and shall be deemed to have been given to Plaintiffs when mailed by first class mail or when actually delivered to Plaintiffs if sent by other means.  Deed of Trust 10, § 15 [147-2].

similar to the Deed of Trust entitled servicer to establish an escrow account for the payment of property taxes but not passing on the issue of whether servicer's correspondence was sufficient to put borrowers on notice that the waiver of escrow was being revoked).[4]  The Court is of the opinion that whether the Annual Escrow Account Disclosure Statement sent by Saxon to Plaintiffs constituted notice of Saxon's revocation of the Initial Waiver as that notice is contemplated by the terms of Deed of Trust presents a question of fact.

The Court further finds that the dispute between the parties over whether Saxon properly applied Plaintiffs' payments presents a question of fact.  Citing what it contends is an expert report, Saxon posits that there is no dispute it properly applied all of Plaintiffs' payments on the Loan.  Saxon's Rebuttal Br. 10 [205].  Plaintiffs rely upon what they argue is an expert report of their own which demonstrates that "there is no doubt" Saxon misapplied Loan payments.  Pls.' Resp. in Opp'n 27 [187].  *See also* Ex. 4 to Pls.' Mot. for Partial Summ. J. [159-4].  The parties' submissions plainly reveal a question of fact as to whether Plaintiffs' Loan payments were properly applied under the terms of the Deed of Trust.  Hence, summary judgment is not warranted as to the breach of contract claim.

---

[4] In *Teeuwissen*, the servicer sent two letters to the borrowers.  2011 WL 5593164, at *2.  The first letter gave the borrowers fifteen days to pay their property taxes and warned that if they did not do so, the servicer may revoke the waiver and establish an escrow account.  *Id*.  The second letter came twenty-one days later and stated "[a]s permitted under the terms of your mortgage [note], [the servicer] has established an escrow account to make" the tax payment at issue "and all future tax payments on [the borrowers'] behalf . . . ."  *Id*.  The letter concluded by promising the borrowers that the servicer was going to conduct an escrow analysis and would forward a new mortgage statement including an adjusted mortgage payment amount.  *Id*.

2.    <u>Negligence Claim</u>

Saxon argues that it is entitled to summary judgment on Plaintiffs'
negligence claim because the only duties that existed between Plaintiffs and Saxon
were contractual, Plaintiffs have not stated a plausible negligence claim, and the
undisputed facts indicate all of Plaintiffs' mortgage payments were applied
correctly.  Mem. in Supp. of Mot. for Summ. J. 13-14 [148].  Plaintiffs counter by
pointing out that the existence of a duty giving rise to a negligence claim is not
limited to a contract.  Pls.' Resp. in Opp'n 24-25 [187].  Plaintiffs contend that Saxon
owed Plaintiffs a duty "to act as a reasonably prudent servicer under similar
circumstances" and that this duty "encompass[ed] the obligation to apply mortgage
payments to the [L]oan in accordance with the terms of the Deed of Trust and to
employ due care . . . ."  *Id.*

Plaintiffs argue that they are entitled to summary judgment on their
negligence claim on the theory that Saxon breached its duty to apply their
payments correctly and to ensure that it had a right to create an escrow account.
Mem. in Supp. of Pls.' Mot. for Partial Summ. J. 22-23 [160].  Saxon posits that
Plaintiffs are not entitled to judgment as a matter of law on their negligence claim
because Saxon was entitled to place insurance on the Property and Saxon correctly
applied all of Plaintiffs' payments pursuant to the terms of the Loan.  Saxon's Resp.
in Opp'n 11-15 [185].

The Court is of the opinion that neither Plaintiffs nor Saxon are entitled to
summary judgment on the negligence claim.  "A duty to act reasonably toward

another may arise by virtue of some undertaking regardless of the existence of a legal contract. . . . Whenever a person does some act, the law imposes a duty upon that person to take reasonable care in performing that act." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 649 (S.D. Miss. 2013) (citations omitted). Saxon's exclusive focus on the terms of the Loan as the sole source of any duties it may have owed Plaintiffs is misplaced. Because Saxon undertook to act as a servicer of Plaintiffs' Loan, Saxon owed Plaintiffs a legally enforceable duty related to the allegations in the Second Amended Complaint. *Id.* at 649-50 (citations omitted). The Court thus concludes that Saxon is not entitled to summary judgment based on Saxon's argument that the only duty existing between Plaintiffs and Saxon was contractual.

The Court similarly concludes that Plaintiffs are not entitled to summary judgment on their negligence claim.

> A plaintiff advancing a negligence claim . . . must show by a preponderance of the evidence that the defendant had a duty, breached that duty, causing the plaintiff to suffer damages, and a causal connection between those damages and the breach of duty such that the breach is the proximate cause of the damages . . . .

*Robbins v. Computer Sciences Corp.*, 486 F. Supp. 2d 581, 586 (S.D. Miss. 2007) (citing *Gulledge v. Shaw*, 880 So. 2d 288, 292-93 (Miss. 2004)). As the movants bearing the burden of proof on their negligence claim, Plaintiffs "must establish beyond peradventure all of the essential elements of [their negligence] claim . . . to warrant judgment in [their] favor." *Fontenot*, 780 F.2d at 94.

Plaintiffs have not established as a matter of law that Saxon breached any duty it owed them.  Claiming to each have expert opinions supporting their positions, the parties sharply dispute whether Saxon correctly applied Plaintiffs' payments.[5]  *Compare* Ex. 14 to Saxon's Mot. for Summ. J. [147-14] *with* Ex. 4 to Pls.' Mot. for Partial Summ. J. [159-4].  Where Plaintiffs purport to provide evidence that Saxon charged them for lender placed insurance despite Plaintiffs having already purchased insurance for the Property, Saxon cites evidence that each of the charges were eventually credited back to Plaintiffs.  *Compare* Neel Dep. 133:4-19, 155:25-156:9 *with* Ex. "N" to Saxon's Mot. for Summ. J. [147-14].  The Court is of the opinion that Plaintiffs have not carried the heavy burden placed upon them, and their Motion for Partial Summary Judgment as to their negligence claim should be denied.

3.   <u>Fraud Claim</u>

Saxon asserts that Plaintiffs have not pleaded their purported fraud claim with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Mem. in Supp. of Mot. for Summ. J. 6-7 [148].  Saxon interprets the Second Amended Complaint as advancing a claim for fraud predicated upon the transfer from MERS to Saxon, and maintains that this was a valid transfer which Plaintiffs lack standing to challenge.[6]  *Id*. at 8-9.  Saxon further contends that to the extent

---

[5] This dispute also precludes Saxon's request for summary judgment on Plaintiffs' negligence claim predicated upon the argument that all payments were applied correctly.

[6] To the extent Plaintiffs rely upon the transfer from MERS to Saxon as the basis of their fraud claim, Saxon is entitled to summary judgment for the reasons previously articulated by the Court in its Order [213] granting MERS' Amended Motion for Summary Judgment as to Plaintiffs' fraudulent conveyance claim.

Plaintiffs base their fraud claim on Saxon establishing an escrow account for the payment of Plaintiffs' insurance and property taxes, the claim fails as a matter of law because Plaintiffs permitted their flood and hazard insurance to lapse which allowed Saxon to revoke the Initial Waiver and establish an escrow account. *Id*. at 9-11. To the extent Plaintiffs ground their fraud claim on Saxon's determination that the mortgage was in default, Saxon argues that there is no dispute that Plaintiffs' Loan was in default once they failed to make their required monthly payments in May 2010. *Id*. at 12. Plaintiffs counter that they have sufficiently pleaded each element of fraud. Pls.' Resp. in Opp'n 21-22 [187]. Plaintiffs recite an array of facts obtained through discovery that they contend "demonstrate how Saxon committed fraud . . . ." *Id*. at 22-23.

Plaintiffs seek summary judgment as to their fraud claim based on sums of money Saxon allegedly informed Plaintiffs they had to pay to bring the loan current or to remove the escrow account, Saxon's placement of insurance on the Property despite Plaintiffs having submitted proof of insurance, and Saxon informing Plaintiffs of incorrect balances in the escrow account. Mem. in Supp. of Mot. for Partial Summ. J. 27-29 [160]. Plaintiffs emphasize that Saxon informed them that they needed to make a specific payment to bring the Loan current, Plaintiffs made the payment, and Saxon, after initially applying the payment to bring the Loan current, reapplied the payment which Plaintiffs claim eventually put them in default. *Id*. at 29. Plaintiffs then assert they "have proven fraud by clear and convincing evidence . . . ." *Id*. Saxon opposes Plaintiffs' Motion and responds that it

14

cannot be liable to Plaintiffs based on instructions that Saxon gave to Plaintiffs regarding payments to bring the Loan current where Plaintiffs were already in default under the terms of the Loan.  Saxon's Resp. in Opp'n 14-15 [185].

Saxon challenges the manner in which Plaintiffs have pleaded their fraud claim and asserts that Plaintiffs have failed to state a claim for fraud.  Saxon's challenge to Plaintiffs' fraud claim thus will be measured by the standard for granting a motion for judgment on the pleadings.  *See Shorty v. Liddell*, No. 4:07-cv-207-M-A, 2008 WL 5111003, at *1 (N.D. Miss. Dec. 2, 2008), *aff'd*, 356 F. App'x 769 (5th Cir. 2009) (treating motion for summary judgment as a motion for judgment on the pleadings given the motion's brevity); *Williams v. Cessna Aircraft Corp.*, 376 F. Supp. 603, 605 (N.D. Miss. 1974) (treating motion for summary judgment as a motion for judgment on the pleadings where motion was not based on evidentiary matters outside the pleadings and the motion was not filed at a time that would cause a delay of the trial).

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss."  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  All well-pleaded facts are accepted as true and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Federal Rule of Civil Procedure 9(b) requires a party pleading fraud to "state with particularity the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b).  "A complaint can be long-winded, even

prolix, without pleading with particularity." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). "[T]he elements of intentional or fraudulent misrepresentation are: '(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.'" *McCord v. Healthcare Recoveries, Inc.*, 960 So. 2d 399, 406 (Miss. 2007) (quoting *Franklin v. Lovitt Equip. Co., Inc.*, 420 So. 2d 1370, 1373 (Miss. 1982)).

A close reading of Plaintiffs' Second Amended Complaint and the allegations upon which Plaintiffs rely in response to Saxon's Motion on the fraud claim reveals that Plaintiffs have not pleaded fraud with particularity and Saxon is entitled to judgment on the pleadings. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Brown v. Coleman Investments, Inc.*, 993 F. Supp. 439, 447 (M.D. La. 1998) (quoting *Williams*, 112 F.3d at 177) (quotations omitted). Aside from occasional, general references to the Loan documents, Plaintiffs' allegations offer no meaningful particularity regarding the identity of any speakers or when and where the allegedly fraudulent statements were made. *See, e.g.*, Second Am. Compl. ¶ 16 (stating on "multiple occasions" Plaintiffs have provided Saxon with information that Plaintiffs contend demonstrates there was no need for

16

lender-placed insurance), ¶ 17 (alleging "the servicers" engaged in fraud), ¶ 18 (alleging "the servicers" falsely stated Plaintiffs were in default), and ¶ 24 (stating "multiple servicing errors" were made).  Plaintiffs also do not allege that they were ignorant of the falsity of any of the purported misrepresentations.  *See McCord*, 960 So. 2d at 406 (stating "ignorance of [a misrepresentation's] falsity" is an element of fraud). The Second Amended Complaint actually indicates Plaintiffs refused to believe that they needed to make escrow payments to Saxon, that Saxon was entitled to place insurance on the Property, or that Saxon was abiding by the terms of the Loan.  Second Am. Compl. ¶¶ 10, 16, 17, and 40.  This is insufficient to plead fraud with the requisite particularity.

In addition, Plaintiffs' almost exclusive reliance upon information obtained through discovery to defeat Saxon's Rule 9(b) challenge to the manner in which Plaintiffs pleaded their fraud claim is something Rule 9(b) has been interpreted to prevent.  One of the purposes of Rule 9(b) is "to eliminate fraud actions in which all the facts are learned after discovery . . . ."  *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 494 (S.D. Tex. 2003) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)) , *aff'd*, 111 F. App'x 296 (5th Cir. 2004).  Plaintiffs base much of their response to Saxon's Rule 9(b) argument on information gained through the discovery process and use that information to set out the "who, what, when, where, and why" of their fraud claim against Saxon.  Pls.' Resp. in Opp'n 22-23 [187].  Allowing Plaintiffs to supplement the Second Amended Complaint at this stage with facts obtained through discovery contravenes the Fifth

Circuit Court of Appeals' treatment of Rule 9(b).  *See Williams*, 112 F.3d at 178

("Directly put, the who, what, when, and where must be laid out *before* access to the

discovery process is granted) (emphasis in original).  The Court is of the opinion

that Plaintiffs failed to plead their purported fraud claim with the particularity

required by Rule 9(b) and cases interpreting that rule.  Saxon is entitled to

judgment on the pleadings as to Plaintiffs' purported fraud claim.

      4.    <u>Claim for Breach of Fiduciary Duty</u>

      Saxon seeks judgment as a matter of law as to Plaintiffs' claim for breach of

fiduciary duty, taking the position that Mississippi law has never recognized a

fiduciary duty between a mortgagor and mortgagee.  Mem. in Supp. of Mot. for

Summ. J. 16-17 [148].  While recognizing that "a fiduciary duty does not exist" in

the relationship between mortgagor and mortgagee, Plaintiffs nevertheless argue

that Saxon owed Plaintiffs a fiduciary duty because mortgagors and mortgagees are

in a relationship of trust and Saxon, as mortgagee, should not be allowed to abuse

this trust.  Pls.' Resp. in Opp'n 29-30 [187].  Plaintiffs maintain that Saxon was in

control of handling Plaintiffs' funds once paid by Plaintiffs, thus giving rise to a

fiduciary relationship.  *Id*. at 30.  Plaintiffs also claim that Saxon took on the duties

of an escrow agent lending further support to the existence of a fiduciary duty.  *Id*.

at 31.

      Plaintiffs assert that they are entitled to judgment as a matter of law on their

breach of fiduciary duty claim based on the trust that they were entitled to place in

Saxon to apply payments as required under the terms of the contract.  Mem. in

Supp. of Mot. for Partial Summ. J. 29-30 [160].  Plaintiffs reason that they enjoyed a common benefit with Saxon related to satisfying the Loan, Plaintiffs justifiably placed trust in Saxon, and Saxon had effective control over Plaintiffs.  *Id.* at 30. Plaintiffs also contend that Saxon was an escrow agent and breached the duties it owed as an escrow agent.  *Id.*

The Court finds that Plaintiffs have not carried their summary judgment burden on their claim for breach of fiduciary duty and Saxon is entitled to judgment as a matter of law on this claim.  "Simply put, 'a mortgagee-mortgagor relationship is not a fiduciary one . . . .'"  *Burgess v. Bankplus*, 830 So. 2d 1223, 1228 (Miss. 2002) (quoting *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 816 (Miss. 1996)).  The Mississippi Supreme Court "has never held that the relationship between a mortgagor and mortgagee is a fiduciary one."  *Hopewell*, 680 So. 2d at 816.  Rather, "the mortgagor-mortgagee relationship is 'simply an arms length business transaction.'"  *Id.* at 817.  Plaintiffs have not established the existence of facts giving rise to a fiduciary duty under the circumstances of this case.  *See Kirby v. Bank of Am., N.A.*, No. 2:09-cv-182-DCB-JMR, 2012 WL 1067944, at *7 (S.D. Miss. Mar. 29, 2012) (granting mortgage servicer's motion for summary judgment on breach of fiduciary duty claim after pointing out servicer accepted mortgage payments for its own benefit while mortgagors made payments for their own benefit and thus there was no evidence of a common benefit which would support a fiduciary duty).  Saxon is entitled to summary judgment on Plaintiffs' claim for breach of fiduciary duty.

5.   RESPA Claim

Saxon moves for summary judgment as to Plaintiffs' RESPA on grounds that Plaintiffs did not allege that the Loan was a "federally related mortgage loan." Mem. in Supp. of Mot. for Summ. J. 18-19 [148].  Plaintiffs respond by pointing out that they have asserted the Loan was a "federally related mortgage loan" because they named Fannie Mae as a Defendant and made specific allegations as to Fannie Mae.  Pls.' Resp. in Opp'n 32 [187].

In granting [214] RCS' Amended Motion for Summary Judgment, the Court addressed this very argument and concluded that the fact that Plaintiffs did not allege that the Loan was a "federally related mortgage loan" as that term is defined pursuant to 12 U.S.C. § 2602, deprived Plaintiffs of standing to assert a RESPA claim.  The Court's discussion and conclusion in that Order [214] applies with equal force here, and Saxon is entitled to summary judgment on Plaintiffs' RESPA claim.[7]

6.   FDCPA Claim

Saxon seeks judgment as a matter of law as to Plaintiffs' FDCPA claim, arguing that Saxon cannot be considered a "debt collector" and thus cannot be liable to Plaintiffs pursuant to the FDCPA.  Mem. in Supp. of Mot. for Summ. J. 19-21 [148].  Plaintiffs respond by contending that the FDCPA's definition of "debt collectors" includes servicers who are assigned a debt that is already in default. Pls.' Resp. in Opp'n 34-35 [187].  Plaintiffs are correct that the term "debt collector"

---

[7] To the extent that Plaintiffs attempt to assert a claim pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1691, for the first time in response to Saxon's Motion for Summary Judgment, Plaintiffs are precluded  from doing so.  *See* Mem. Op. and Order Granting Residential Credit Solutions, Inc.'s Am. Mot. for Summ. J. 18 n.5 [214]

as defined under the FDCPA "does not include . . . a mortgage servicing company[] or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).  There can be no legitimate dispute, however, that Saxon cannot be considered a "debt collector" under the FDCPA in this case.  *See* Ex. "T" to Saxon's Rebuttal [205-1] (stating the loan was assigned to Saxon in March 2010 and Plaintiffs "made payment[s] on March 15, 2010, and April 15, 2010") *and* Ex. 13 to Resp. in Opp'n [186-13] (indicating Plaintiffs made payments on March 15, 2010, and April 15, 2010).  The record supports the conclusion that the Loan was not in default when it was assigned to Saxon.  For this reason, Saxon was not a "debt collector" within the meaning of the FDCPA, and Saxon is entitled to summary judgment on this claim.

 7.   HAMP Claim

 Saxon moves for summary judgment on Plaintiffs' "HAMP claim" on the basis that HAMP does not create a private right of action in favor of Plaintiffs.  Mem. in Supp. of Mot. for Summ. J. 17-18 [148].  Plaintiffs counter that Saxon misrepresented to Fannie Mae that Plaintiffs made only two payments during the trial modification as opposed to the five that Plaintiffs contend they made.  Pls.' Resp. in Opp'n 31 [187].  Plaintiffs also argue that "Saxon failed to consider [Plaintiffs] for other modification options" and "could not explain the modification [to Plaintiffs] adequately . . . ."  *Id.* at 31-32.

 Plaintiffs' "HAMP claim" is not well taken.  "HAMP does not create a private right of action in a borrower."  *Ortiz v. Citimortgage, Inc.*, 954 F. Supp. 2d 581, 587

n.2 (S.D. Tex. 2013) (quoting *Tran v. BAC Home Loans Servicing, LP*, No. 4:10-cv-3514, 2011 WL 5057099, at *2 (S.D. Tex. Oct. 24, 2011)) (quotations omitted). Without citation to legal authority, Plaintiffs reason that summary judgment is not warranted as to their purported "HAMP claims" because Saxon did not provide them with other modification options and failed to sufficiently explain the proposed modification plan.  Plaintiffs have not carried their summary judgment burden as to their purported "HAMP claim" against Saxon, and Saxon is entitled to judgment as a matter of law on this claim.  *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 572-73 (S.D. Tex. 2012), *aff'd sub nom.*, *Kiper v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 266 (5th Cir. 2013) (dismissing claim alleging that servicers failed to propose a loan modification in accordance with HAMP and requesting court require defendant to submit in good faith a "legitimate loan modification" to plaintiff  because HAMP does not create a private right of action against servicers) (citing *Miller v. Chase Home Finance, LLC*, 677 F.3d 1113, 1116-17 (11th Cir. 2012)).

## III. CONCLUSION

Having considered the parties' submissions, the record, and relevant legal authorities, the Court concludes that Plaintiffs have not carried their summary judgment burden with respect to their Motion for Partial Summary Judgment.  The Court further concludes that while Saxon has not carried its summary judgment burden as Plaintiffs' breach of contract and negligence claims, Saxon is entitled to

summary judgment as to Plaintiffs' claims for fraud, breach of fiduciary duty, violation of RESPA, violation of the FDCPA, and violation of HAMP.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment [159] is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Saxon's Motion for Summary Judgment [147] is **GRANTED IN PART AND DENIED IN PART** as stated herein, and Plaintiffs' claims against Saxon for fraud, breach of fiduciary duty, violation of RESPA, violation of the FDCPA, and violation of HAMP are each **DISMISSED WITH PREJUDICE**.  Plaintiffs' breach of contract and negligence claims will proceed.

**SO ORDERED AND ADJUDGED**, this the 17th day of March, 2014.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE