IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES NEEL and<br>BONNIE NEEL | §<br>§<br>§ | PLAINTIFFS |
| V. | §<br>§ | CIVIL NO. 1:12cv311-HSO-RHW |
| FANNIE MAE; RESIDENTIAL<br>CREDIT SOLUTIONS, INC.; SAXON<br>MORTGAGE SERVICES, INC.;<br>CAPITAL LENDING, LLC;<br>MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>and JOHN DOES 1-10 | §<br>§<br>§<br>§<br>§<br>§<br>§ | DEFENDANTS |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SAXON MORTGAGE SERVICES, INC.'S MOTION TO STRIKE

BEFORE THE COURT is the Motion to Strike [154] filed by Defendant Saxon Mortgage Services, Inc.  Plaintiffs Charles and Bonnie Neel have filed a Response in Opposition [174], and Saxon has filed its Rebuttal [201].  Having considered the parties' submissions, the record, and relevant legal authority, the Court is of the opinion that Saxon's Motion to Strike should be granted in part with respect to (1) each of the witnesses disclosed by Plaintiffs on October 12, 2013, four days before the discovery deadline; (2) Plaintiff Bonnie Neel's medical records from Dr. Alfred McNair Jr., Dr. Karin Levesque, and Nurse Lisa Netton; and (3) Plaintiffs' disclosure of Derek Inkol.  The Court further finds that Saxon's Motion to Strike should be denied in part with respect to Plaintiffs' disclosure of Dr. Michael Christie and the medical records reflecting his treatment of Bonnie Neel.

1

## I. FACTUAL BACKGROUND

Saxon's Motion to Strike focuses on three separate instances in which Plaintiffs purported to supplement their discovery responses and production. On October 16, 2013, sixteen days prior to the November 1, 2013, discovery deadline, Plaintiffs for the first time in this litigation produced medical records for Bonnie Neel. Mem. Br. in Supp. of Mot. to Strike 3 [154]. On October 28, 2013, Plaintiffs also identified the following seven witnesses:

> [1] Derek Inkol, [2] Representative(s) of Assurant Payment Services, Inc., [3] Representatives of any forced placed carrier identified by any servicer, [4] Treating physicians of Bonnie Neel including but not limited to those listed in medical records previously produced and further records and bills attached, [5] Individual healthcare providers who have treated and may be treating Bonnie Neel, [6] Any and all witnesses that wrote letters on behalf of any of the defendants, [and] [7] Any and all witnesses identified in the communication logs produced by defendants.

*Id*. at 4. On October 31, 2013, one day before the discovery deadline, Plaintiffs produced to Saxon an unsigned affidavit executed by Derek Inkol, who opined that Plaintiffs' credit had been negatively affected some "100 to 200 points" due to Saxon's alleged mishandling of Plaintiffs' loan. *Id*. at 5-6.

Saxon seeks exclusion of Bonnie Neel's medical records provided sixteen days prior to the discovery deadline arguing that the production was untimely and that the records are irrelevant.[1] *Id*. at 3. Saxon claims that Plaintiffs' identification of fact witnesses four days before the discovery deadline was untimely and

---

[1] To the extent that Saxon predicates its Motion to Strike on the relevancy of medical records, this is not a determination that the Court will make at this time. *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) ("A disputed question of fact cannot be decided on motion to strike.").

2

insufficient, thus justifying their exclusion. *Id.* at 5. Saxon further contends that Plaintiffs' disclosure of Inkol amounted to an attempt to disclose a purported credit reporting expert which was untimely and insufficient. *Id.* at 6.

## II. DISCUSSION

A. <u>Legal Standard</u>

"[A] party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(A)(i). "[A] Party must [also], without awaiting a discovery request, provide to the other parties . . . a copy . . . of all documents . . . that the disclosing party has in its possession, care, custody, or control and may use to support its claims . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Parties are under an ongoing duty to timely supplement these required initial disclosures. Fed. R. Civ. P. 26(e)(1)(A). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

If a party intends to present a witness who has been "retained or specially employed to provide expert testimony in the case," that party must disclose the identity of the witness who will provide expert testimony and the disclosure must be

3

accompanied by a written report.  Fed. R. Civ. P. 26(a)(2)(A).  The written report must include

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  This disclosure of expert testimony must be made "at the times . . . that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  Expert testimony which is not timely or properly disclosed is subject to being excluded as provided for under Rule 37, unless the failure to properly disclose is substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1). In this case, the Case Management Order [10] imposed a deadline of April 1, 2013, for Plaintiffs to designate their expert witnesses, and the Court subsequently extended that deadline to June 21, 2013.  Order Regarding Discovery 2 [71].

B.   Analysis

   1.   Production of Medical Records and Identification of Fact Witnesses

Looking to the names of Plaintiffs' potential witnesses identified four days before the discovery deadline, the Court finds that these additional witnesses should be excluded.  Without waiting for a discovery request to do so, Plaintiffs were required to supply Saxon with the "name and, if known, the address and telephone number of each individual . . . that [Plaintiffs] may use to support [their] claims[.]" Fed. R. Civ. P. 26(a)(1)(A)(i).  Aside from identifying Dr. McNair, Dr. Levesque, Dr.

Christie, and Nurse Netton,[2] Plaintiffs merely list unidentified "representatives" of Assurant Property Services, Inc. and "any forced place carrier[,]" "[i]ndividual healthcare providers" who treated Bonnie Neel, and "any and all witnesses" either who wrote correspondence to Plaintiffs or who were identified in "communication logs." Supplemental Resp. 2-3. Such broad, ambiguous descriptions conform with neither the requirements nor the purpose of Rule 26(a)(1)(A). *See, e.g.*, *Reed v. Iowa Repair & Marine Co.*, 16 F.3d 82, 85 (5th Cir. 1994)) (noting the "basic purpose" of the supplementation required by Rule 26(e) is "preventing prejudice and surprise"). These disclosures were insufficient and should be struck.

With respect to the medical personnel Plaintiffs have specifically identified, the Court is of the view that all but Dr. Christie should be excluded. Plaintiffs offer no justification as to why they waited until four days prior to the discovery deadline to identify for the first time potential witnesses Dr. McNair, Dr. Levesque, and Nurse Netton. Plaintiffs' unexplained delay in identifying these three witnesses prevented discovery into those witnesses and justifies their exclusion. *Terrance v. Pointe Coupee Parish Police Jury*, 177 F. App'x 457, 459 (5th Cir. 2006) (affirming district court's exclusion of doctor's testimony disclosed "several months before trial" where plaintiff failed to disclose witness as required under Rule 26(a), plaintiff provided no reason for the late disclosure, and defendants were prejudiced by not having the opportunity to depose the doctor).

---

[2] Plaintiffs also identified Derek Inkol and Marvin Robinson. Supplemental Resp. to Interrog. Propounded by Def. Saxon Mortgage Services, Inc. ("Supplemental Resp.") 2 [153-2]. Saxon does not seek Robinson's exclusion. The Court addresses Saxon's request to exclude Inkol in Part II.B.2.

The same cannot be said of Plaintiff's supplemental disclosure of Dr. Christie. Rule 26(e)(1) does not mandate supplementation where "the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). During Plaintiffs' deposition on September 13, 2013, Saxon learned of Dr. Christie's treatment of Plaintiff Bonnie Neel. Dep. of Charles and Bonnie Neel 177:17-24 [158-5]. Under the circumstances and considering the record as a whole, the Court is of the view that Saxon's request that Dr. Christie be excluded should be denied.

Turning to the medical records Plaintiffs produced just over two weeks prior to the discovery deadline, the Court finds that these medical records, with the exception of Dr. Christie's records, should be excluded. Rule 26(a)(1)(A)(ii) required Plaintiffs to produce these medical records once Bonnie Neel became a Plaintiff on May 16, 2013. By inexplicably waiting to produce these records until two weeks prior to the discovery deadline, Plaintiffs prejudiced Saxon to the extent that the records came from Dr. McNair, Dr. Levesque, and Nurse Netton, each of whom had not been previously disclosed. *See Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1040 (5th Cir. 1999) (concluding district court did not abuse its discretion in excluding defendants' expert witness where defendants failed to timely identify the expert as required under Rule 26(a) and provided no explanation for their delay).

The records reflecting Dr. Christie's medical care, however, are less prejudicial and will not be excluded. Saxon learned of Dr. Christie's identity and location nearly two months prior to the discovery deadline and could have easily

6

subpoenaed Dr. Christie's records well before the discovery deadline. *See Guzman v. Abbott Laboratories*, 59 F. Supp. 2d 747, 755 (N.D. Ill. 1999) (citing *Charles v. Cotter*, 867 F. Supp. 648, 654 (N.D. Ill. 1994)) ("[Defendant] cannot claim that it was unfairly surprised by these medical records; [defendant] was aware of the treating doctors and could have issued a subpoena itself for [their] records."). Saxon's Motion to Strike will thus be granted with respect to the medical records of Dr. McNair, Dr. Levesque, and Nurse Netton, but denied as to the medical records of Dr. Christie.

    2.    <u>Designation of Derek Inkol</u>

In response to Saxon's request to exclude Plaintiffs' purported credit reporting expert, Derek Inkol, Plaintiffs contend that Inkol is being offered as a fact witness to testify that Plaintiffs' credit score has decreased "100 to 200 points" as a result of negative credit reporting. Inkol's opinion is based upon his review of Charles Neel's credit reports, his "13-year experience [*sic*]," and his review of "a trusted source in credit scoring (FICO) . . . ." Aff. of Derek Inkol ¶ 11 [153-5]. Inkol admittedly bases his opinion upon the specialized knowledge that he claims he has obtained through his 13 years of experience. The Court is not convinced that an ordinary lay person could estimate with any reliability the number of credit points lost due to negative credit reporting. The Court thus concludes that Inkol's opinions constitute expert rather than lay testimony. *See United States v. Caldwell*, 586 F.3d 338, 348 (5th Cir. 2009) (noting that whether testimony constitutes expert opinion or lay opinion "seems to turn on whether the testimony falls within the

realm of knowledge of the average lay person") (citation omitted); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996) ("a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person") (citation omitted).  Because the substance of Inkol's opinion requires that he be qualified as an expert, Plaintiffs should have properly designated Inkol no later than the June 21, 2013, expert disclosure deadline.

> In ruling on whether to exclude an out-of-time expert designation, the Court's discretion . . . is to be guided by the consideration of four factors: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness.

*Bradley v. United States*, 866 F.2d 120, 124-25 (5th Cir. 1989).  With respect to the importance of Inkol's testimony, Plaintiffs concede that "an ordinary juror is well-aware that one's credit rating decreases if creditors make negative reports to credit bureaus."  Mem. Br. in Supp. of Opp'n to Saxon's Mot. to Strike 8 [175].  As to the second factor, Saxon stands to suffer prejudice because Plaintiffs' limited disclosure of Inkol falls far short of the requirements for a proper expert designation.  As to the fourth factor, Plaintiffs have provided no justification for their delay in identifying Inkol.  While it would be possible for the Court to grant a continuance of the trial, doing so would suggest that the Court's deadlines are malleable even when confronted with unexplained failures to meet those deadlines.  Saxon's request to exclude Inkol should be granted.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Saxon Mortgage Services, Inc.'s Motion to Strike is **GRANTED IN PART** as to the following: (1) Plaintiff's supplemental identification of "representatives" of Assurant Property Services, Inc. and "any forced place carrier[,]" "[i]ndividual healthcare providers" who treated Bonnie Neel, and "any and all witnesses" either who wrote correspondence to Plaintiffs or who were identified in "communication logs"; (2) Dr. McNair, Dr. Levesque, and Nurse Netton, along with the medical records of each; and (3) the testimony of Derek Inkol and his affidavit.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Saxon Mortgage Services, Inc.'s Motion to Strike is **DENIED IN PART** to the extent Saxon seeks to exclude Dr. Christie and his medical records.

**SO ORDERED AND ADJUDGED**, this the 2nd day of April, 2014.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE